■ JAMES A. TROY et al., Respondents, v LONG ISLAND JEWISH-HILLSIDE MEDICAL CENTER et al., Defendants, and LEROY LAVINE et al., Appellants. — In a medical malpractice action, defendants Lavine and Rubins appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Queens County (Zelman, J.), entered June 23, 1980, as is in favor of the plaintiffs and against them, after a jury trial. Judgment reversed insofar as appealed from, on the law and as a matter of discretion in the interest of justice, without costs or disbursements, and as between plaintiffs and defendants Lavine and Rubins, action severed and new trial granted. In September, 1975, while painting his house, plaintiff James Troy fell from a ladder and suffered a compound, comminuted fracture of the right ankle. He received treatment for his injury at Long Island Jewish-Hillside Medical Center and, while at the hospital and for some months thereafter, was under the care of defendant Dr. Walter Rubins. There is some dispute in the record as to whether Dr. Rubins himself terminated the treatment or whether, despite the doctor's admonition that further treatment was necessary, Mr. Troy discontinued the treatment on his own. In any event, Dr. Rubins did not treat Mr. Troy after March, 1976. In June, 1976, Mr. Troy went to the Veterans Administration Hospital, where it was determined that he had a valgus deformity and that there was both a malunion and a nonunion in the ankle. As a result, bone graft surgery was performed at the Veterans Administration Hospital to correct the condition. Subsequently, plaintiffs commenced this action against Long Island Jewish-Hillside Medical Center, and against Dr. Rubins and three physicians associated with him. One of those physicians was Dr. Leroy Lavine. Thereafter, prior to trial, the action as against the hospital was voluntarily discontinued. At trial, plaintiffs contended that the defendant physicians had been negligent in that (1) they failed to operate on the ankle to correct the valgus deformity, (2) they improperly discharged Mr. Troy as a patient at a time when he was still suffering from a severe medical problem, and (3) they inadequately informed Mr. Troy about his condition and possible treatment. At the close of plaintiffs' case, the action as against the three physicians associated with Dr. Rubins was dismissed on the ground that there was no evidence that any of the three had treated Mr. Troy. The trial thereupon proceeded with the case for defendant Rubins. Testifying in his own behalf, Rubins claimed that he had not discharged Mr. Troy and that he had given the plaintiffs a complete explanation of Mr. Troy's condition and possible courses of treatment. In the course of cross-examination, Dr. Rubins testified that Dr. Lavine had seen Mr. Troy many times at the hospital. Dr. Rubins thereupon called Dr. Lavine as a witness, and Lavine confirmed that he had seen Mr. Troy at the hospital. Lavine expressed his view that the course of Troy's treatment was proper. Following the presentation of expert testimony in support of Rubins' contention that surgery on Mr. Troy was contraindicated, the defense rested. Plaintiffs thereupon moved to reinstate Dr. Lavine as a defendant. The motion was granted and defense counsel's resulting application for a mistrial was denied. At the outset, we conclude that it was a proper exercise of the trial court's discretion to reinstate Dr. Lavine as a defendant in the action. Although initially plaintiffs had been unable to recall which physician, other than Dr. Rubins, had treated Mr. Troy in the hospital, that gap in the evidence, certainly critical as to the case against Dr. Lavine, was filled by Rubins and Lavine themselves. Furthermore, a hospital chart received in evidence indicated a number of visits made to Mr. Troy by Dr. Lavine. Thus, the trial court properly acted in the interest of justice by reinstating the action against Dr.

Lavine (see CPLR 2001, 2002; cf. *Wilson v McCarthy,* 53 AD2d 860). Nevertheless, upon taking that action, the court should have granted the appellants' motion for a mistrial and ordered a new trial as against them. It is a distinct possibility that defense strategy would have been different had Dr. Lavine remained as a defendant throughout the case. Moreover, the apparent shuffling of defendants may well have caused confusion among the jurors. Therefore, under the unusual circumstances at bar, and with the attendant possibility of prejudice, the court abused its discretion in denying the mistrial application (cf. *Metropolitan Life Ins. Co. v Whitaker,* 34 AD2d 729). Additionally, the court committed error in its instruction on informed consent. In speaking of that subject, the court stated: "In other words, simply — simple language a doctor must give the patient all the options he has available to him and then allow the patient to make his choice." The appellants excepted to this portion of the charge. A physician's duty is to explain all the facts that "a reasonable medical practitioner under similar circumstances would have disclosed" (Public Health Law, § 2805-d, subd 1; PJI 2:150B). Although an earlier portion of the charge contained such language, the court's subsequent attempt to paraphrase the law resulted in a misstatement of the principle and may have caused the jury to misunderstand the appropriate standard. Finally, since we remit the case for a new trial, we take the opportunity to point out two further errors which should not recur. The court failed to instruct the jury to itemize any verdict reached in the plaintiffs' favor (see CPLR 4111, subd [d]). Upon remand, such an instruction should be given. Moreover, the court failed to marshal the medical testimony. Considering the complexity of the medical evidence, and the sharp dispute as to proper medical procedure, the court should have marshaled the medical testimony (see *Quigley v County of Suffolk,* 75 AD2d 888). Mollen, P. J., Weinstein, O'Connor and Thompson, JJ., concur.