PATRICIA A. DOOLEY et al., Respondents, v KENNETH SKODNEK,
Appellant.

Second Department, June 20, 1988

## APPEARANCES OF COUNSEL

*Kissam & Halpin (Leslie Trager* of counsel), for appellant.

*Rheingold & McGowan, P. C. (Paul D. Rheingold* of counsel), for Patricia Ann Dooley, respondent.

*Fisher & Seidner, P. C. (Aaron Lebenger* of counsel), for Thomas Dooley, respondent.

## OPINION OF THE COURT

Per Curiam.

In April 1978 the plaintiff Patricia Ann Dooley (hereinafter the plaintiff) came under the care of the defendant, a psychiatrist, while she was hospitalized at a psychiatric institution after having made a suicide attempt. The plaintiff remained under the defendant's care through July 1980 during which time the defendant prescribed the antipsychotic drug Mellaril. It is undisputed that Mellaril caused the plaintiff to suffer pigmentary retinopathy, resulting in her being rendered legally blind.

At the trial, the plaintiff presented evidence of both negligence on the part of the defendant and lack of her informed consent. After the presentation of all the evidence in the case, the trial court granted the plaintiffs' motion for judgment as a matter of law on both theories. With respect to the negligence claim, the court found that the defendant's testimony that "he was not aware of all of the side effects of the Mellaril * * * and [he] was not aware of the symptoms of the side effects of the Mellaril he was [then] prescribing * * * for use by the plaintiff" supported a finding of a departure from good and accepted psychiatric practice as a matter of law, which was a proximate cause of the injuries sustained by the plaintiff.

■■ The cause of action predicated on the theory of lack of informed consent (Public Health Law § 2805-d), the trial court determined, was similarly established as a matter of law inasmuch as the defendant could not possibly have advised the plaintiff of the potential for blindness since he himself was not cognizant of this side effect. We disagree with the trial court's assessment of the evidence and, accordingly, reverse.

Upon a motion for a judgment as a matter of law, the trial court's function is not to weigh the evidence, but rather, in taking the case from the jury, to determine "that by no rational process could the trier of the facts base a finding in favor of the defendant upon the evidence * * * presented" *(Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 245; *see, Lipsius v White,* 91 AD2d 271, 276-277).

In connection with the plaintiff's claim alleging negligence,

the defendant testified consistently that he recognized that Mellaril could cause pigmentary retinopathy, a condition which would result in a diminution of vision. Indeed, his knowledge was demonstrated by his very actions in discontinuing the medication upon initially learning of the plaintiff's vision difficulties and referring the plaintiff to an ophthalmologist. Critical in the evaluation of the defendant's testimony is the opinion of the defendant's expert, Dr. Abraham Halpern, a board certified psychiatrist, who stated that Dr. Skodnek had in all respects followed good and accepted medical practice. He specifically testified as follows:

"Q: Was it known in 1978 as to whether pigmentary retinopathy could progress to a level where it could cause blindness?

"A: Yes, there is a certain percentage of cases that would go on to blindness.

"Q: And so that was known in 1978 at the time that this defendant [had] prescribed Mellaril to Mrs. Dooley, correct?

"A: Yes, sir.

"Q: And if the defendant did not know that in 1978, would that be a departure from accepted standards of practice in 1978?

"A: Well, if he knew that it caused pigmentary retinitis, that would be satisfactory.

"Q: In other words he's not required to know that the injury could progress to a state where it could actually deprive a person of their sight?

"A: I would say that the reason I say it would be appropriate, the standard could just include retinitis, is that if the blindness ultimately that might eventuate is due to the pigmentary retinitis, then that would occur only after a prolonged period of time. You have to stop the Mellaril long before pigmentary retinitis goes on to blindness".

■ Thus, despite Dr. Skodnek's candid admission that he was not aware of the potential for blindness, his expert's testimony that the defendant's knowledge that prolonged use of the drug could cause pigmentary retinitis was a sufficient basis from which the jury could conclude that the defendant did not depart from accepted standards of psychiatric practice in his treatment of the plaintiff.

■ As to the claim of lack of informed consent, based upon Dr. Skodnek's testimony and that of his expert, we find sufficient proof in the record for the purpose of raising a

factual issue for the jury's determination. When the plaintiff first came under the defendant's care, she was already taking Mellaril, which had been prescribed by another psychiatrist. The defendant explained that in light of the plaintiff's history of emotional problems and her suicidal state at the time of her admission to the hospital, he declined to advise the plaintiff of the drug's more severe side effects for fear of disturbing her even more. He did, however, testify that soon thereafter, he informed her of the possibility that her visual acuity could be impaired by the drug. Dr. Skodnek's position that good medical practice did not require informing the plaintiff immediately of the possible side effects of the drug was supported by the testimony of Dr. Halpern, who stated that it was, in fact, inadvisable, "while [the plaintiff was in] an acutely depressed state to recount to her all the detailed horrors of [this] medication and its side effects * * * I think it was appropriate not to engage in any discussion as to the side effects in this particular case under those particular circumstances". While the defense position and the defendant's version of his conversations with the plaintiff were controverted in significant part by the plaintiff, this conflict simply presented a question of fact for the jury and judgment as a matter of law was therefore unwarranted.

We would further note with respect to the claim of lack of informed consent (see, Public Health Law § 2805-d [3]), that the plaintiff's testimony that, had she known prior to ingesting the drug, that she might experience vision difficulties which could cause blindness, she would not have consented to the treatment despite her mental condition at the time, raised a question of fact for the jury on this issue. It was incumbent upon the plaintiff to establish "by a preponderance of the evidence * * * that a reasonably prudent person in the patient's circumstances would have refused to undergo the [treatment] if reasonably informed of the significant perils" (Proce v Franklin Gen. Hosp., 83 AD2d 903, lv denied 55 NY2d 603; see, Public Health Law § 2805-d [3]). In light of the objective nature of the standard, "[t]he patient's testimony is relevant, but not determinative" (Zeleznik v Jewish Chronic Disease Hosp., 47 AD2d 199, 207) and presents a question of fact which requires the jury to balance the risks associated with undergoing the treatment against those associated with foregoing it under the circumstances of each case (see, Hylick v Halweil, 112 AD2d 400, 402; Brandon v Karp, 112 AD2d

490, 492; *Flores v Flushing Hosp. & Med. Center,* 109 AD2d 198, 200-202).

■ Turning now to the plaintiff's damage claim for impairment of earning capacity, we agree with the defendant's argument that the plaintiff was improperly permitted to amend her bill of particulars to include such a claim for the first time on the eve of trial. The defendant was thereby deprived of the opportunity to avail himself of discovery and adequately prepare his case on this issue and was, as a result, significantly prejudiced *(see, Kurnitz v Croft,* 91 AD2d 972). However, in light of our ultimate determination in this case, we need not disturb the granting of the amendment, nor do we pass upon the merits of the plaintiff's claim of loss of earnings.

■ Finally, we find that the trial court's charge to the jury with respect to the claim of the plaintiff's husband, Thomas Dooley, for loss of services, was improper insofar as it permitted an award for damages sustained subsequent to the Dooleys' separation. The record reveals that the Dooleys encountered marital difficulties and ultimately physically separated in 1984, four years after the plaintiff was diagnosed as suffering from pigmentary retinopathy. At the time of trial a divorce action was pending. In the absence of any testimony regarding the likelihood of a reconciliation between the Dooleys, the jury should have been instructed that Mr. Dooley's right of recovery was limited to the period of time prior to his separation from his wife *(cf., Quaglio v Tomaselli,* 99 AD2d 487, 488-489).

MANGANO, J. P., BROWN, LAWRENCE and SPATT, JJ., concur.

Ordered that the judgment is reversed, on the law, and a new trial is granted, with costs to abide the event.