# LAURIE MARIE M., Respondent, v JEFFREY T. M., Appellant.

Second Department, July 18, 1990

**APPEARANCES OF COUNSEL**

*John J. Gochman (Augusta Devnet* of counsel), for appellant.

*Barry Birbrower (Cathy A. Taft* of counsel), for respondent.

**OPINION OF THE COURT**

MILLER, J.

This appeal presents questions as to the appropriateness and excessiveness of the verdicts rendered in a civil action founded on intrafamilial child sex abuse. After a trial, the court granted the plaintiff's motion for judgment as a matter of law on the issue of liability with respect to the battery cause of action, and upon a jury verdict, the defendant was found liable for intentional infliction of emotional distress for sexually touching the plaintiff, his 11-year-old step-daughter. The jury awarded the infant plaintiff $200,000 in compensatory damages and $275,000 in punitive damages. We find, contrary to the defendant's contention, that the trial court properly granted judgment as a matter of law with respect to battery, inasmuch as the defendant admitted that he sexually touched the plaintiff. The principal issues of the appropriateness of awarding punitive damages and the reason-

ableness of compensatory and punitive damages in the context of a civil recovery for intrafamilial child abuse apparently have never been directly addressed by a court of this State *(see, Doe v Esposito,* 114 AD2d 992). Mindful of the precedent which will be established, we find that the compensatory award was excessive to the extent indicated below, that the issue of punitive damages was properly submitted to the jury, and that the punitive damages award was also excessive to the extent indicated herein.

I. FACTS

The infant plaintiff was sexually abused by her stepfather, the defendant, in 1980, less than one year after he married her divorced mother and adopted the plaintiff and her younger brother. The defendant admitted rubbing and touching the plaintiff's breasts and genital area and having her rub and touch his genitals. He disputed only the duration of his behavior. According to plaintiff, 20 incidents occurred over a period of two months in 1980. According to defendant, there were 4 to 6 incidents in the space of 5 to 6 weeks, after which he stopped his behavior because he knew "it was wrong".

Five years passed before the plaintiff reported the incidents to her mother. Confronted by his wife, the defendant first denied, then quickly admitted the occurrences. His wife refused to talk to him and directed him to leave the marital home, which he did, returning to live with his parents. The incident was reported to Child Protective Services and the defendant appears to have cooperated with its investigation. However, the marriage, which was apparently in trouble before the plaintiff reported the abuse, disintegrated. All parties entered therapy. The defendant never saw the plaintiff or her brother again.

The plaintiff commenced this action against the defendant in January 1987. At the trial two years later, the plaintiff (who was by then 19 years old), her mother, and the plaintiff's therapist, a licensed clinical social worker, testified, as well as the defendant and his expert, a psychiatrist who had interviewed the plaintiff for 2½ hours. Both experts diagnosed the plaintiff as suffering from a posttraumatic stress disorder caused by the defendant's sexual activities with her when she was 11 years old and testified she would continue to suffer from nightmares, fears, anxiety, dependency and difficulties with relationships with men caused by the incidents. Although the defendant's expert believed the plaintiff's difficul-

ties also stemmed from a developmental personality disorder originating in her earlier childhood prior to the incidents, he could not apportion causation factors. Both experts agreed that the plaintiff had improved by age 19 and had made a reasonable adjustment, although she needed further counseling. However, and most significantly, they both articulated that there were limits to the plaintiff's full recovery even with therapy, and both gave guarded prognoses.

The plaintiff submitted no proof of special damages, not even, for example, the costs incurred for therapy, past or future, although at the time of the trial, she had been in therapy for three years and her therapist believed she would need continuing counseling. The only evidence as to the cost of therapy was provided by the defendant's expert, who recommended intensive treatment with a psychiatrist twice a week for three years, at an estimated cost of $30,000.

## II. LIABILITY FOR BATTERY

A plaintiff, to recover damages for battery founded on bodily contact, must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact (see, Lambertson v United States, 528 F2d 441, 444, cert denied 426 US 921; see also, Maines v Cronomer Val. Fire Dept., 50 NY2d 535, 546; Masters v Becker, 22 AD2d 118). "Upon a motion for a judgment as a matter of law, the trial court's function is not to weigh the evidence, but rather, in taking the case from the jury, to determine, 'that by no rational process could the trier of the facts base a finding in favor of the defendant upon the evidence * * * presented' (Blum v Fresh Grown Preserve Corp., 292 NY 241, 245; see, Lipsius v White, 91 AD2d 271, 276-277)" (Dooley v Skodnek, 138 AD2d 102, 104).

Where the defendant in prior proceedings acknowledged under oath that he had raped his daughter, this court determined that the plaintiff daughter was entitled to summary judgment as to liability for causes of action sounding in assault and intentional infliction of emotional distress (see, Doe v Esposito, 114 AD2d 992, supra).

In the instant case, the defendant admitted in his trial testimony that he touched the plaintiff's breasts and vagina, an admission that he was guilty of sexual abuse in the second degree (see, Penal Law § 130.60). Accordingly, we find that the trial court properly granted the plaintiff judgment as a matter of law on the battery cause of action (see generally, Blum v

*Fresh Grown Preserve Corp.,* 292 NY 241, 245, *supra; Dooley v Skodnek,* 138 AD2d 102, *supra).*

### III. COMPENSATORY AND PUNITIVE DAMAGES

The defendant was found liable for battery and intentional infliction of emotional distress. His conduct fits within the rule stated in the Restatement (Second) of Torts § 46 (1) that: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress" *(see also, Fischer v Maloney,* 43 NY2d 553, 557). It has been held that general and special damages need not even be pleaded or shown to make out a cause of action sounding in intentional infliction of emotional distress *(see,* PJI 3:6; *see also, Halperin v Salvan,* 117 AD2d 544).

Nonpecuniary damages, the key component in the tort of intentional infliction of emotional distress, are, by their nature, not susceptible to mathematical computation *(see, McDougald v Garber,* 73 NY2d 246, 257). The plaintiff's subjective testimony of pain may be sufficient to establish an injury for which he or she is entitled to some compensation, but the proof must satisfactorily establish that the injury is more than minimal *(see, Levine v Abergel,* 127 AD2d 822, 824). Verdicts awarding compensatory damages will be upheld, unless it can be said that the award "deviates materially from what would be reasonable compensation" (CPLR 5501 [c]).

There are few reported cases in New York involving civil actions to recover damages for sexual abuse. In *Roy v Hartogs* (85 Misc 2d 891), where the jury determined that the defendant psychiatrist induced the plaintiff patient to have sexual relations with him, the Appellate Term, First Department, in 1976 reduced the jury award of $50,000 in compensatory damages to $25,000 and struck the punitive damages award (without mentioning the amount) on the basis of the plaintiff's long-standing prior psychiatric condition. However, the trial court in *Micari v Mann* (126 Misc 2d 422), granted a new trial as to punitive damages unless the defendant stipulated to punitive damages of $5,000 per plaintiff, concluding that the defendant teacher's deplorable, outrageous conduct in sexually abusing his students warranted those awards of punitive damages. The Court of Appeals in *Public Serv. Mut. Ins. Co. v Goldfarb* (53 NY2d 392), was principally concerned with the obligations of a dentist's insurer, forced to anticipate the likelihood of future jury awards of compensatory and punitive

damages, in a case where the dentist had been convicted of sexually abusing his patient. Similarly in *Doe v Esposito (supra)*, this court anticipated damage awards after liability for sexual assault was established *(see also, Richard L. v Armon,* 144 AD2d 1).

In one unreported case, where a stepfather sexually abused each of his three stepchildren over a period of four years, the jury awarded each child and the mother substantial compensatory damages ranging from $100,000 to $150,000 and also punitive damages ranging from $75,000 to $175,000 *(Fischer v Fischer,* Sup Ct, Monroe County, Dec. 12, 1989, Galloway, J.).

Reported cases in other jurisdictions offer scant guidance. In *Elkington v Foust* (618 P2d 37 [Utah]), $12,000 in compensatory damages and $30,000 in punitive damages were awarded. In the Illinois case of *Parsons v McRoberts* (123 Ill App 3d 1006, 463 NE2d 1049), the plaintiff was awarded $12,000 in compensatory and $18,000 in punitive damages. In both cases, the defendants had forced their daughters to engage in sexual intercourse, far more egregious conduct than in the case at bar.

Nor, despite the plaintiff's urgings, are we able to equate the case at bar to the brutal rape of a college student at knife point *(see, Miller v State of New York,* 110 AD2d 627). There, the plaintiff was awarded $400,000 in compensatory damages against the State.

The injury to the plaintiff is nonetheless concededly serious. Both experts agreed that as a result of being abused by her stepfather, a trusted parental figure, the prognosis for the plaintiff's capacity to engage in intimate, trusting, and satisfactory relationships is adversely affected. We do not place a negligible value upon the young woman's potentially lessened capacity to participate fully as wife, mother, lover, or friend.

■ Nevertheless, we determine that the award of compensatory damages was excessive in view of the absence of the plaintiff's proof of special damages, and the paucity of proof of permanent psychological damage. The evidence showed that the plaintiff was functioning fairly well eight years after the offenses—dating, working, going to school. We therefore determine that $100,000 is a reasonable award for compensatory damages.

Although the defendant argues only that punitive damages were inappropriate in the context of a purely private wrong, we address not only that question but also find it necessary to

review the size of the award and the question of whether it is excessive *(see, Hartford Acc. & Indem. Co. v Village of Hempstead,* 48 NY2d 218, 229).

Punitive damages generally are reserved for rare cases exhibiting malice, fraud, oppression, insult, wantonness, or other aggravated circumstances which effect a public interest *(see, Walker v Sheldon,* 10 NY2d 401; *Le Mistral, Inc. v Columbia Broadcasting Sys.,* 61 AD2d 491). Although the Court of Appeals held they may be allowed in the case of a private wrong *(see, Borkowski v Borkowski,* 39 NY2d 982), the court nevertheless denied punitive damages where one family member perpetrated a fraudulent conveyance against another. Recently, the Court of Appeals sustained an award of punitive damages stemming from the fraudulent sale of stock in a close corporation, deeming the defendant's actions a willful, wanton disregard of the rights of fellow shareholders and a breach of fiduciary duty *(see, Giblin v Murphy,* 73 NY2d 769).

This court stated, in denying punitive damages, that an award of punitive damages must be based on " 'quasi-criminal conduct' or * * * utterly reckless behavior" or a demonstrated "malicious intent" to injure the plaintiff, or gross, wanton or willful fraud or other morally culpable conduct *(see, Maitrejean v Levon Props. Corp.,* 87 AD2d 605, 606). Clearly, the purpose of punitive damages is to punish and deter others from acting in a similar manner *(Hartford Acc. & Indem. Co. v Village of Hempstead, supra,* at 226; Restatement [Second] of Torts § 908); the award is " 'to serve as a warning to others' " and " 'as punishment for gross misbehavior for the good of the public' " *(Toomey v Farley,* 2 NY2d 71, 83).

Although punitive damages are disfavored in negligence and contract actions *(see, Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, *cert denied* 410 US 931; *Garrity v Lyle Stewart, Inc.,* 40 NY2d 354), they have often been awarded and upheld in cases involving intentional torts on the theory that the conduct charged portends significant harm to the public interest.

Thus, assaults by an employer against an employee *(see, Levine v Abergel,* 127 AD2d 822, *supra; Leopold v Britt,* 58 AD2d 856), by store employees against a customer *(see, O'Donnell v K-Mart Corp.,* 100 AD2d 488), and by police officers against civilians in civil rights actions brought pursuant to 42 USC § 1983 *(see, Hartford Acc. & Indem. Co. v Village of Hempstead,* 48 NY2d 218, *supra),* have been held to merit

punitive damages. Where persons in positions of power or authority wantonly misuse their authority or maliciously abuse the courts or the media, awards of punitive damages have been upheld *(see, e.g., Gostkowski v Roman Catholic Church,* 262 NY 320; *see also, Toomey v Farley,* 2 NY2d 71, *supra; Pickle v Page,* 252 NY 474, *affg* 225 App Div 454; *Nardelli v Stamberg,* 44 NY2d 500).

Likewise, the few reported New York cases dealing with punitive damages where sexual abuse committed by a professional figure has occurred, also demonstrate the recurring theme of betrayal of a relationship involving a public trust, e.g., psychiatrist-patient *(Roy v Hartogs,* 85 Misc 2d 891, *supra),* dentist-patient *(see, Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392, *supra),* and teacher-student *(Micari v Mann,* 126 Misc 2d 422, *supra).*

It is well established that the determination whether to award punitive damages lies in the discretion of the trier of fact and will not lightly be disturbed on appeal *(Nardelli v Stamberg, supra,* at 503-504). In *Nardelli,* the Court of Appeals reversed and held that an appellate court could not strike a jury award of punitive damages in the face of the jury's finding of liability on a cause of action sounding in malicious prosecution. With respect to torts like malicious prosecution, the tort-feasor's motive of actual malice is both a necessary element of the cause of action and is reason for awarding punitive damages *(see, Nardelli v Stamberg, supra,* at 503).

■ Similarly in the case at bar, it may be said that the finding of fact that the defendant was liable for damages for intentional infliction of emotional distress, and liable for damages for battery, necessarily encompassed findings that the defendant committed reckless or intentional acts certain to cause severe emotional distress. Those findings may also be a predicate for the award of punitive damages *(see, Nardelli v Stamberg, supra).*

Furthermore, the defendant's admitted conduct here is the equivalent to sexual abuse in the second degree *(see,* Penal Law § 130.60), although the defendant was never prosecuted for that crime. Thus, the criminal or quasi-criminal standard for conduct articulated in *Maitrejean v Levon Props. Corp.* (87 AD2d 605, *supra),* and *Public Serv. Mut. Ins. Co. v Goldfarb* (53 NY2d 392, *supra),* has been met. There is no doubt that the wrong the jury and court found that the defendant committed is egregious. The betrayal of a child's trust by a close

family member is no less reprehensible than the betrayal of a public trust by a psychiatrist, teacher or dentist. In fact, the devastating effect upon the child might well be even greater. The rising tide of cases involving sexual abuse against children by adults in the family context causes incalculable injury to society as well as private interests. Tragically, abused children often themselves become child abusers, perpetuating continuing hideous damage to society from generation to generation. The deterrent value of punitive damages in such cases becomes important. We therefore find that the conduct in the case at bar warrants the drastic sanction of punitive damages. While the jury was not required to award punitive damages as a matter of law (cf., Roy v Hartogs, 85 Misc 2d 891, 894, supra; see, Nardelli v Stamberg, supra) in the circumstances here, which exhibited the requisite element of wanton disregard of the child's rights and well-being, we cannot say that the court improperly submitted the issue of punitive damages to the jury or that the jury, having found the defendant liable, improperly awarded punitive damages.

The Appellate Division retains its own discretion to overturn an excessive jury verdict and order a new trial unless plaintiff will consent to a reduction in the amount of damages (Nardelli v Stamberg, supra, at 503-504). The standard of review of punitive damages is the same as for compensatory damages (Restatement [Second] of Torts § 908, comment d; Walker v Sheldon, 10 NY2d 401, at 405, n 3, supra). One appellate court has viewed appellate review of punitive damage awards as an exercise of its "duty * * * 'to keep a verdict for punitive damages within reasonable bounds considering the purpose to be achieved as well as the mala fides of the defendant in the particular case' " (Nellis v Miller, 101 AD2d 1002, 1003).

In determining the amount of punitive damages, the trier of fact can properly consider all circumstances immediately connected with the transaction tending to exhibit or explain the motive of the defendant, the harm done to the plaintiff, the wealth of the defendant, and the degree of deterrence resulting from the award (Le Mistral, Inc. v Columbia Broadcasting Sys., 61 AD2d 491, supra; Levine v Abergel, 127 AD2d 822, 825, supra; Restatement [Second] of Torts § 908, comment e). The facts of the case at bar suggest that the defendant lacked the malicious, evil motives frequently

cited as a requirement for very large punitive damage awards *(see, Hartford Acc. & Indem. Co. v Village of Hempstead,* 48 NY2d 218, *supra; see also, Wittman v Gilson,* 70 NY2d 970). Here, the defendant recognized his wrongdoing and voluntarily ceased his conduct, cooperated with investigation of the Child Protective Services, has no history of deviate behavior before or since, and is unlikely to repeat his actions. Moreover, the large size of both the compensatory and punitive awards suggests that a certain amount of duplication may exist in the award of punitive damages and that the jury may have been been motivated by passion *(see, Nardelli v Stamberg, supra,* at 504; Restatement [Second] of Torts § 908, comment c). Although the defendant did not attempt to prove that his financial circumstances warranted a limitation of a punitive damages award *(see, Rupert v Sellers,* 48 AD2d 265, 268-272; *see also, Varriale v Saratoga Harness Racing,* 76 AD2d 991, 992), no evidence was presented to show that defendant, who works in a family business in The Bronx, who upon his marriage brought his wife and her two children to live with him in his two-bedroom home in Putnam Valley, and who upon the break-up of his marriage returned to reside with his parents in Rockland County, is a wealthy man. In these circumstances, we find the punitive damages award was excessive and reduce it to $100,000.

Accordingly, a new trial is ordered unless the plaintiff stipulates to reduction of the award of compensatory damages to $100,000 and punitive damages to $100,000.

Rubin, J. P., Eiber and Rosenblatt, JJ., concur.

Ordered that the judgment is reversed, on the facts and as a matter of discretion, without costs or disbursements, and a new trial is granted on the issue of damages only, unless within 20 days after the service upon the plaintiff of a copy of this opinion and order, with notice of entry, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Putnam County, a written stipulation consenting to a reduction of the verdict as to compensatory damages to $100,000, and the verdict as to punitive damages to $100,000, and to the entry of an amended judgment in the principal sum of $200,000, accordingly. In the event the plaintiff so stipulates, the judgment, as so reduced and amended is affirmed, without costs or disbursements.