■ CARL BROWN, Appellant, v STATE OF NEW YORK, Respondent. [596 NYS2d 882] —Harvey, J. Appeals (1) from an order of the Court of Claims (E. Margolis, J.), entered January 14, 1992, which partially granted the State's motion to strike certain material from claimant's posttrial memorandum, and (2) from a judgment in favor of the State, entered April 27, 1992, upon a decision of said court.

Claimant was incarcerated following his conviction on a felony charge and was transferred to Eastern Correctional Facility in Ulster County in April 1984. Upon entering Eastern claimant was given a physical exam, at which time he informed the examiner that he smoked a pack and a half of cigarettes per day. The next month claimant went on a "sick call" and reportedly complained to a facility nurse about a sore throat; he was provided throat lozenges. After claimant continued to complain of hoarseness for several weeks, he was seen by Abraham Garfinkel, an Eastern physician. Although claimant testified that Garfinkel found a lump in his throat at that examination, Garfinkel's notes in claimant's medical record state "No nodes palpable." Garfinkel's notes also state that "[i]f hoarseness persists * * * may need * * * referral for laryngoscopy". Thereafter, in late August 1984, claimant again saw Garfinkel who arranged an examination for claimant at Westchester Medical Center (hereinafter WMC). On August 27, 1984 claimant was examined at WMC by Gerald Rosmarin, who subsequently performed an indirect laryngoscopy, noted a necrotic growth on claimant's right vocal cord and recommended a direct laryngoscopy and a biopsy.* Rosmarin performed a biopsy in December 1984. It was discovered that claimant had a cancerous lesion on his right vocal cord

---

* An indirect laryngoscopy is usually performed in a doctor's office and involves the use of a mirror to visually examine the larynx. A direct laryngoscopy is a physical exploration and examination of the larynx performed when the patient is under general anesthesia. A necrotic growth is a "heaped up layering of tissue that does not have an obvious mucosal surface * * * [which] means [that] there is something destructive * * * infectious * * * or ganulomatous [or possibly cancerous]".

and he was scheduled for radiation therapy. Claimant underwent radiation therapy at WMC from January 1985 through March 1985, after which he was discharged back to Eastern. Although claimant's hoarseness briefly improved thereafter, it quickly returned in April 1985.

Claimant continued to complain of hoarseness and it was suspected that another lesion had formed. Claimant was examined on May 12, 1985 by Rosmarin who ordered another direct laryngoscopy and biopsy, which were performed in June 1985. Apparently Rosmarin was not happy with the biopsy results and he indicated to claimant that he wanted to see him in another two months for another biopsy. On August 9, 1985 claimant received a radiation follow-up examination at WMC, which indicated that his vocal cords were normal but his hoarseness had increased and that he should return in three months. Subsequently, claimant's condition failed to improve and on September 9, 1985 claimant was brought to WMC for a direct laryngoscopy. He was not admitted, however, that day or on another day, apparently due to lack of space at WMC. On November 19, 1985 Rosmarin performed a direct laryngoscopy and biopsy on claimant at WMC and two days later Rosmarin performed a total laryngectomy on claimant, which involved surgical removal of the cancerous larynx. Claimant underwent additional surgery in January 1988.

Claimant thereafter commenced this claim against the State alleging negligence and medical malpractice. Specifically, claimant alleged, *inter alia*, that the State failed to provide prompt and competent medical treatment upon claimant's initial complaints of hoarseness and constant sore throat, that it delayed in providing radiation therapy for the necrotic growth on claimant's larynx, and that it failed to follow up and treat claimant's continued complaints which ultimately led to the need for the complete removal of claimant's larynx. Following a trial in the matter, the Court of Claims dismissed the claim finding, *inter alia*, that the delay in treatment of claimant did not contribute to the growth of claimant's cancer or deprive him of an opportunity for cure. In other words, the court concluded that claimant failed to prove a causal connection between the loss of claimant's larynx and the State's alleged negligence. Claimant appeals.

We affirm. In our view, the Court of Claims' determination following its extensive consideration of the relevant facts and conflicting medical testimony need not be disturbed. While it is true that the consensus of medical evidence presented by all parties left little doubt that there was some unnecessary delay

in claimant's treatment before and/or after his radiation therapy, in order for claimant to prove that the delays in diagnosis and/or treatment were a proximate cause of his injury, evidence was required that there was a "substantial possibility" that the removal of claimant's larynx was *caused* by the delay and that the State's negligence deprived claimant of an appreciable chance of avoiding the loss suffered *(see, Kimball v Scors,* 59 AD2d 984, 985, *lv denied* 43 NY2d 648; *see also, Kennedy v Peninsula Hosp. Ctr.,* 135 AD2d 788, 792; *Mortensen v Memorial Hosp.,* 105 AD2d 151, 157-158). With respect to the pivotal question of proximate cause, the Court of Appeals has noted: "The issue of causation in medicine is always difficult but, when it involves the effect of a failure to follow a certain course of treatment, the problem is presented in its most extreme form. We can then only deal in probabilities since it can never be known with certainty whether a different course of treatment would have avoided the adverse consequences" *(Toth v Community Hosp.,* 22 NY2d 255, 261).

In this case, the medical testimony on the issue of proximate cause conflicted sharply. Significantly, this Court is reluctant to disturb findings of the Court of Claims which are based solely upon credibility *(see, Colangione v State of New York,* 187 AD2d 844). Claimant's expert otolaryngologist, David Myssiorek, testified that the lesion described by the pathologist in December 1984, when the first direct laryngoscopy and biopsy were performed on claimant, was a T-1 lesion, described as a very mild and curable stage of cancer. The "cure rate" for a lesion of this sort, i.e., the cases that are successfully treated without loss of the larynx, is in the area of 85 to 90%. Despite the early stage of the cancer, Myssiorek opined that the delay between the time the biopsy was ordered in August 1984 and when it was performed worsened claimant's chances of survival and made the loss of the larynx more probable. However, the State's first expert witness, otolaryngologist Edward Stasio, testified that the delay in performing the biopsy was not significant because the cancer diagnosis of a T-1 No Mo tumor (meaning that the mobility of the vocal fold was normal, there were no palpable nodes, and there was no metastases) could not have been any more favorable to claimant. Moreover, he opined that there was no way to state with any reasonable degree of medical certainty that the delay in treatment contributed to the eventual loss of claimant's larynx.

With respect to the issue of any postradiation delay in treatment, Stasio testified that he believed the outcome of

treatment would have been no better if the new tumor had been diagnosed or treated earlier. Of even greater significance to this issue, however, was the testimony of the State's second medical expert, John Jaski, a physician board-certified in internal medicine and medical oncology. Jaski gave his opinion that claimant unfortunately fell within the 10 to 15% of people whose T-1 No Mo tumors were not cured by radiation therapy. In fact, given the malignant and aggressive nature of the tumor that formed after radiation therapy, Jaski felt that if a second, more conservative treatment of this tumor had been tried, as opposed to a total laryngectomy, it actually might have worsened claimant's chances of survival.

Given the nature of this and other evidence provided and the fact that claimant obviously did not respond satisfactorily to the radiation therapy, we conclude that the Court of Claims' reliance on the testimony of the State's medical experts was not unreasonable under the circumstances. Accordingly, even if it can be said that the State was negligent in its treatment of claimant, such negligence has not been shown to be a proximate cause of claimant's injuries (see, Mortensen v Memorial Hosp., supra, at 158).

Given our resolution of this issue, it is unnecessary to address the parties' remaining contentions.

Levine, J. P., Mercure, Mahoney and Casey, JJ., concur. Ordered that the order and judgment are affirmed, without costs.