■ RONALD MARCHIONE, Appellant, v STATE OF NEW YORK,

Respondent. [598 NYS2d 592] —Harvey, J. Appeal from a judgment in favor of the State, entered February 10, 1992, upon a decision of the Court of Claims (E. Margolis, J.).

Claimant, a 35-year-old inmate at Altona Correctional Facility in Clinton County, was found in May 1985 to be suffering from high blood pressure after he had gone on sick call for a fever and a sore throat. Claimant was ultimately diagnosed as having hypertension and Paul Brayer, one of the facility's part-time physicians, initially prescribed the drug Tenormin to control claimant's condition. After claimant experienced side effects from this drug, he was taken off this medication and Brayer prescribed the drug Minipress in the latter part of April 1986.[1]

Thereafter, on May 14, 1986 claimant pulled a leg muscle and was examined at the prison clinic. Later, sometime after midnight during the early hours of the morning, claimant began experiencing pain in his penis and became intermittently semi-erect. Assuming that this condition was related to his leg injury, claimant did not seek medical attention. However, later during the morning of May 15, 1986, claimant allegedly became concerned and purportedly filled out and deposited a sick call slip so that he might receive medical attention. Claimant then reported to work. Between 8:00 A.M. and 10:00 A.M., claimant testified that his penis became fully and continuously erect and remained in this painful condition throughout the day as he performed his prison job. During the night the pain became very severe and claimant again purportedly deposited another sick call slip.

Claimant's painful condition did not abate the next day and he was unable to go to work. A correction officer became aware of claimant's condition and sent him to the prison clinic. Claimant was ultimately taken to Saranac Lake Hospital where he was examined by a urologist, Richard Kasulke, who diagnosed claimant as suffering from priapism.[2] Kasulke determined that surgical intervention was necessary and claimant was sent to the Albany Medical Center where sur-

1. Minipress is the brand name for the generic drug prazosin hydrochloride.

2. Priapism is a painful condition in which the penis becomes erect for a prolonged period of time. The condition, if not treated with drugs or needle aspiration within six to eight hours, leads to impotence and requires a surgical intervention known as the Al Ghoreb procedure. For this procedure, a shunt is created to allow blood to drain from the penis. Both prolonged priapism and the Al Ghoreb procedure almost always lead to permanent impotence.

gery was performed. Thereafter, claimant was permanently impotent. Claimant then initiated this claim against the State alleging medical malpractice on the part of the physicians who treated him; he also claims that the medical attention he received after experiencing the condition of priapism was unduly and harmfully delayed. A trial was held after which the Court of Claims determined that claimant failed to establish that the State was liable. Claimant now appeals.

Initially, we address claimant's argument that the State failed to properly inform him of the risks associated with the drug Minipress, specifically priapism, and that this lack of informed consent constituted medical malpractice. There is no question that a physician must obtain a patient's informed consent prior to treatment (76 NY Jur 2d, Malpractice, § 174, at 192). A physician is under an affirmative duty to make a reasonable disclosure to a patient of the possible dangers which are incident to or a consequence of the proposed treatment (see, Lipsius v White, 91 AD2d 271; see also, Public Health Law § 2805-d [1]). That duty of care is satisfied when a physician discloses all the facts that a reasonable physician under similar circumstances would have disclosed (see, Troy v Long Is. Jewish-Hillside Med. Ctr., 86 AD2d 631, 632).

Here, the evidence indicates that Brayer only prescribed Minipress to claimant after an earlier medication had caused a serious side effect. Notably, the major source of information available to physicians, and to Brayer in particular, at the applicable time regarding Minipress was the Physician's Desk Reference (hereinafter PDR), which categorizes and describes drugs currently available on the market. At the trial herein the 1985 version of the PDR was introduced into evidence. Significantly, the description of Minipress does not include priapism in its listing of the most common adverse reactions to Minipress. Instead, this condition appeared among a listing of 31 reactions that "have been associated with Minipress * * * some of them rarely. (In some instances exact causal relationships have not been established)".

At trial, Brayer testified that he did not believe that a causal relationship had been established between Minipress and priapism in 1986 or at the time of trial and that he would have warned claimant about this possibility if he had believed there was a causal relationship. Brayer stated that he normally advises patients only of frequent or severe side effects and there is also testimony that Brayer did warn claimant of at least one of the more frequent reactions to Minipress. The other doctors who examined claimant at the relevant time

also indicate that, in 1986, priapism was not a recognized side effect associated with Minipress. These opinions were supported by the State's expert urologist, Alan Bennett, who testified that it was exceedingly rare for priapism to be associated with the use of Minipress and there was no established causal link between the two. In fact, Bennett opined that under the circumstances of this case there was a greater possibility that claimant's condition was caused by traumatic shock associated with his pulled leg muscle than with Minipress. Bennett also testified that Brayer's treatment of claimant represented good and acceptable medical practice. While claimant's medical expert disagreed with Bennett concerning to what extent Minipress and priapism were known to be causally linked in 1986, the expert admitted on cross-examination that the scientific literature that indicated a causal relationship between the two was based on only one or two reported cases.

We conclude that the Court of Claims' assessment of the conflicting expert testimony was reasonable and should not be disturbed (see, Brown v State of New York, 192 AD2d 936). Despite the fact that priapism was listed among the many possible reactions associated with Minipress in the PDR, it is apparent from the evidence that the risk of Minipress-induced priapism is so rare that it is entirely reasonable to not find a physician liable for failing to inform a patient of such a possibility. Finally, although claimant stated that he would not have agreed to take Minipress if he was aware of the risk of priapism, it is not at all certain from the evidence that a reasonable person, who had shown sensitivity to other medication, would refuse to take a drug to control hypertension, a potentially dangerous condition, simply because of the two or three cases of priapism that occurred in a population of several million who were taking the drug (see, Public Health Law § 2805-d [3]; Bernard v Block, 176 AD2d 843, 848; Goodreau v State of New York, 129 AD2d 978, lv denied 70 NY2d 606). Moreover, with respect to the final factor at issue in informed consent cases, i.e., whether the procedure was the proximate cause of the injury (see, Bernard v Block, supra), we note that the Court of Claims did not definitely credit the testimony that Minipress was the actual cause of claimant's priapism. Accordingly, we find no reason to disturb the Court of Claims' ruling with respect to the issue of informed consent.

Next, claimant argues that the State negligently delayed in providing him with proper medical attention. While the State has a duty to render adequate medical services to inmates

without undue delay, in order for the State to be liable it must be shown that the delays in diagnosis and/or treatment were a proximate or aggravating cause of the claimed injury (see, Brown v State of New York, supra). Consequently, in this case claimant was required to show that there was a "substantial possibility" that his impotence was caused by a delay in treatment by the State and that the State's negligence deprived claimant of an appreciable chance of avoiding the loss suffered (supra). We note that the issue of whether there was actually any delay by the State in its initial response to claimant's condition is in some doubt due to the dispute between the parties over whether claimant actually did submit sick call notes to the prison clinic after the condition of priapism commenced. In any event, assuming, arguendo, that the sick call notes were sent, we still must conclude that claimant did not establish that delay by the State proximately caused his impotence.

Significantly, the consensus of the expert testimony at trial was that priapism should be treated within six to eight hours after its onset because after that period of time there is a strong probability of permanent impotence, either from the priapism itself or from the required surgical intervention. In this case claimant testified that his continuing erection did not begin until between 8:00 A.M. and 10:00 A.M. on May 15, 1986. Prior to this occurrence claimant testified that he dropped off a sick call note, but he also testified that this sick call slip did not indicate whether his situation was an emergency one. After the priapism commenced, claimant went to work and did not submit another sick call slip until the evening when the window of opportunity for preventing impotence had probably already closed. Notably, claimant was not sure if he indicated that it was an emergency on the second slip and he had earlier testified at an examination before trial that he was embarrassed about putting down the nature of his condition. Given this evidence and other testimony from correction officers that claimant did not inform anyone of his condition, we conclude that the Court of Claims was well within its province in finding no liability on the part of the State.

We have examined claimant's remaining arguments and find them to be without merit.

Weiss, P. J., Yesawich Jr., Crew III and Mahoney, JJ., concur. Ordered that the judgment is affirmed, without costs.