Acosta and Renwick, JJ.,
dissent in part in a memorandum by Renwick, J., as follows: Plaintiff commenced this action alleging injury due to medical malpractice based on negligence and medical malpractice based on lack of informed consent after a breast biopsy to determine whether she had breast cancer left a scar on her right breast. Dr. Samuel Pilnik, a breast surgeon, performed the biopsy at Lenox Hill Hospital. Supreme Court granted summary judgment to all defendants and dismissed the entire action. The dismissal of the lack of informed consent claim against Pilnik and Lenox Hill is the sole issue on appeal. I would reverse that part of the order that dismissed the lack of informed consent claim against Pilnik. Accordingly, I respectfully dissent.
The relevant facts are as follows: The deposition testimony of the parties establishes that in November 1999, the then 41-year-old plaintiff, an exotic dancer, visited her primary care physician, Dr. Melvin Weinstein, complaining of a painful lump in her breast. During the examination, Weinstein felt a tender mass in the lateral aspect of plaintiffs right breast and referred her for a mammogram. The mammogram revealed a “palpable abnormality” in the “posterior right breast in the 10 o’clock region” and further evaluation by ultrasound was recommended. An ultrasound study of her right breast revealed a “sonographically normal breast parenchymal tissue” with “[n]o sonographic evidence of a discrete solid or cystic abnormality in the area of the palpable lump in the right upper, outer breast,” and it was recommended that further management be based on “clinical grounds.”
Nevertheless, believing that breast cancer could not be ruled out because the mass remained palpable, painful and distinct from the surrounding breast tissue, Weinstein advised plaintiff to see a breast specialist. Immediately, plaintiff visited Pilnik— one of the doctors Weinstein had recommended. Pilnik examined her right breast, felt a lump, and took a biopsy by fine needle aspiration (FNA). A pathological analysis of the FNA tissue indicated a suspicious lesion. Upon receiving the results, Pilnik called plaintiff and recommended an excisional biopsy. She agreed. Pilnik made no other recommendations, explaining that the “other alternative” to the surgical biopsy was to do a “core biopsy,” which he rejected because the instrument is a “little lighter, finer than that” and he did not believe that was an adequate test.
*546 Plaintiff testified that Pilnik telephoned her about the results and informed her that she was scheduled for a biopsy at Lenox Hill on December 20, 1999 and should call Weinstein to arrange for prescreening blood work. When she expressed concern about any further biopsy and said that she wanted a second opinion, Pilnik told her not to make “a big deal about it.” Pilnik also told her that she would not have any scarring from the biopsy. Plaintiff testified that when she told Weinstein that she did not want “any kind of marks on [her] breasts,” Weinstein said that this was a “routine procedure” and she would not have a scar. He described the procedure as a “punch-shot biopsy” in which “they would stick a needle in the side of the breast, pull out a little tissue, and there would be no scar.”
Pilnik performed the procedure at Lenox Hill. While he testified that he discussed the procedure with plaintiff before performing it, plaintiff denies speaking with Pilnik that morning.
Upon plaintiffs arrival at Lenox Hill, Dr. Alexa Lessow approached her with a consent form authorizing Pilnik to perform “the removal of a nodule in right breast upper outer quadrant.” Plaintiff testified that she read the form, saw the phrase “excision of mass” and told Lessow that she was to have a “punch-shot biopsy,” not an “excision.” Lessow said, “It means the same thing” and plaintiff signed the consent form. At her deposition, plaintiff identified her signature on a copy of a consent form, but testified, “That’s not the form. It said ‘excision of mass.’ That’s what I remember it said.”
The consent form, in addition to being at variance with plaintiffs testimony, does not spell out any risks of, or alternatives to, the procedure. It states that the risks and alternatives have been explained to the signer of the form. A few days after the procedure, the bandage on plaintiffs right breast fell off, revealing a 6.5 centimeter scar.
Supreme Court found that defendants established their prima facie case for dismissal of the claim based on lack of informed consent by demonstrating that plaintiff signed a consent form after being informed of the surgical procedure and its attendant discomforts and risks. The court found that plaintiff failed to raise a triable issue of fact as to the necessary element whether a reasonable person, having been told that she had a suspicious lesion in her breast, would not have undergone the procedure: “The plaintiff has never stated that had she known that a scar of the nature of the one that she bears would be the result of the procedure performed that she would not have consented, but rather that had she been informed she would have sought a *547 second opinion. Dr. Filardi’s affirmation makes no mention of what a reasonable person in plaintiffs position would have done. This failure is fatal to the plaintiffs opposition of [sic] Dr. Pilnik’s motion for summary judgment” (citing Ericson v Palleschi, 23 AD3d 608, 610 [2d Dept 2005]).
Plaintiff does not dispute that defendants made a prima facie showing of entitlement to summary judgment; rather, she asserts that her medical expert’s affidavit, as well as her affidavit and deposition testimony, considered together, create triable issues of fact that preclude summary judgment on the issue of lack of informed consent. I agree with the majority that dismissal of the action against Lenox Hill was appropriate because Pilnik was not an employee of the hospital but a private attending physician for whose acts the hospital is not vicariously liable (Walter v Betancourt, 283 AD2d 223, 224 [2001]). Nor is the hospital liable for the acts of its resident, Lessow, as the record shows that Lessow followed Pilnik’s instructions (id.). However, I depart from the majority’s conclusion that the dismissal of the lack of informed claim against Pilnik was also appropriate.
To recover for medical malpractice based upon a lack of informed consent, a plaintiff must prove that the physician providing the treatment or diagnosis failed to disclose “such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical. . . practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation” (Public Health Law § 2805-d [1]) and “that a reasonably prudent person in the patient’s position would not have undergone the treatment or diagnosis if he had been fully informed and that the lack of informed consent is a proximate cause of the injury or condition for which recovery is sought” (Public Health Law § 2805-d [3]).
To prove the first element, i.e., that the information disclosed rendered the consent qualitatively insufficient, the plaintiff is required to adduce expert medical testimony (CPLR 4401-a). Plaintiff satisfied her burden of raising an issue of fact as to the first element by the submission of an affirmation by Dr. Dominic Filardi. Dr. Filardi stated that “how [plaintiffs] breast would have looked after the operation should have been properly described to her prior to” the operation. In addition, plaintiff testified that she only consented to a nonscarring, minimally invasive biopsy of her breast and that she was not apprised of the risk of significant scarring (see Davis v Caldwell, 54 NY2d 176, 182-183 [1981]).
Supreme Court found that plaintiff failed to raise an issue of *548 fact as to the second element, that a reasonable person, having been told of the suspicious lesion in her breast, would not have undergone the recommended procedure if told that it would leave a large scar. I disagree.
Initially, it must be pointed out that the court erred when it found that plaintiff was required to adduce expert testimony on this issue and that the failure to do so was “fatal” to her case. The court relied exclusively upon Second Department precedent for this proposition. This Court, however, has consistently held that expert testimony is not necessary on the issue whether a reasonably prudent person, fully informed, would not have consented to the treatment (see e.g. Andersen v Delaney, 269 AD2d 193 [2000]; Hardt v LaTrenta, 251 AD2d 174 [1998]; Osorio v Brauner, 242 AD2d 511 [1997], lv denied 91 NY2d 813 [1998]).*
Supreme Court further erred in finding that plaintiff failed to raise an issue of fact as to the second element because she never stated that she would not have undergone the recommended procedure if told that it would leave a large scar; she only said that she would have sought a “second opinion” if she had been properly informed. With this the majority concurs. I disagree. This finding misapprehends the nature of the evidence required to prove this element and, as a result, misstates plaintiff’s burden in opposing a summary judgment motion. The test of whether a reasonably prudent person would have consented if appropriate information had been given is objective rather than subjective (Marchione v State of New York, 194 AD2d 851, 854 [1993]; Dooley v Skodnek, 138 AD2d 102 [1988]). Thus, while the patient’s testimony as to what she would have done if informed is relevant, it is not determinative; there must also be evidence as to the risks associated with undergoing the treatment and those associated with forgoing it (Dooley v Skodnek, 138 AD2d 102, 106-107 [1988]; Zeleznik v Jewish Chronic Disease Hosp., 47 AD2d 199 [1975]).
Here, according plaintiff, the nonmovant, all reasonable inferences in her favor, I find that taken together, her testimony that she would not have permitted the doctor to proceed with the excision biopsy without a second opinion, if she had been fully informed of the risks of significant scarring, and her expert’s testimony that less invasive methods to diagnose the suspicious breast lesion were available, raise an issue of fact whether a reasonably prudent patient would not have had the excision bi *549 opsy if she had known the risks (see e.g. Eppel v Fredericks, 203 AD2d 152 [1994]; Iazzetta v Vicenzi, 200 AD2d 209 [1994]; Alberti v St. John’s Episcopal Hosp.-Smithtown, 116 AD2d 612 [1986]). We cannot say as a matter of law that a reasonably prudent patient, newly diagnosed, fearful of “possible” cancer, and adamantly resistant to any scarring on her breasts, would have undergone the excision biopsy even if the significant risk of scarring and any alternatives or lack of alternatives to the biopsy had been disclosed to her.
Accordingly, defendants’ motion for summary judgment dismissing the cause of action alleging lack of informed consent as against defendant Samuel Pilnik, M.D. should have been denied.

 The Third and Fourth Departments have adopted the view of this Court on the issue (see Laribee v City of Rome, 254 AD2d 805 [1998]; Santilli v CHP, Inc., 274 AD2d 905 [2000]).