■ GREEN ISLAND ASSOCIATES, Respondent, v LAWLER, MATUSKY & SKELLY ENGINEERS, Appellant. (And a Third-Party Action.)—Yesawich, Jr., J. Appeal from an amended judgment of the Supreme Court (Dier, J.), entered March 30, 1990 in Warren County, upon a verdict rendered in favor of plaintiff.

In 1981, plaintiff purchased the historic Sagamore Resort, located on Lake George in Warren County. Plaintiff hired, among others, third-party defendant Bennett, Levin & Associates (hereinafter Bennett),* a mechanical and electrical engineering firm, to help it undertake the planned renovation. Bennett designed a unique heat pump system, the templifier, which was to use nearby lake water to heat and cool the hotel.

For the templifier to perform most economically and effi-

---

* Bennett and another third-party defendant were eventually dismissed from the suit.

ciently, the water supply temperature could be no lower than 38 degrees Fahrenheit; this minimum temperature was a critical design criteria of the system. Bennett, which was located in Philadelphia, Pennsylvania, contacted defendant, an environmental science and engineering consulting firm, to help design the heat pump's intake and outfall supply and obtain necessary environmental permits. In a letter dated August 31, 1983, Thomas Pease, defendant's director of hazardous waste and geology, outlined defendant's understanding of the tasks it was expected to perform. The letter proposed that "[defendant would] review * * * data files to develop Lake George temperature profiles [descriptions of the water temperature at different depths] and define natural temperature fluctuations, if possible * * * [and develop] a design and plan for installation of the intake and discharge".

Thereafter, Pease reviewed the limited lake temperature data available and proposed a tentative intake depth. In a letter dated October 4, 1983, Pease cautioned: "Final locations [for the intake] also depend on the lakebed profile, which we do not yet have. Based on published temperature data from 1970, 1971, and 1972 at a depth of 30 ft, water of 34 to 39° F will be supplied. Mr. Ron Stewart at the State University of New York at Albany (SUNY) has provided data indicating that water of only 34 to 35° F is available at this depth. Even at a depth of 60 ft, water may be only 35° F. Dean Long of the Freshwater Institute, on the other hand, estimates that 38 to 39° F water is available at 30 ft. We are awaiting confirmation of his opinion in writing and transmittal of data."

Based on this tentative assertion that a water temperature of 38 degrees Fahrenheit would be found, Bennett recommended that plaintiff install the templifier to heat the resort in the winter (summer use was abandoned for reasons not relevant to this appeal). On the same day that Pease forwarded the above correspondence, he received a letter from Long which indicated that he had: "reviewed the data which was gathered under the supervision of Dr. D. Aulenbach from 3/6/73. These data show that temperature under the ice is 2° C [35°F] throughout the water column to a depth of 20 m [65 feet] at Tea Island. [The] data from a more recent study of a mid-winter rainstorm at Smith Bay on Lake George (see enclosures) shows temperatures of 3° C [37° F] to a depth of 13 m [42 feet] (which was the deepest profile completed). * * * [T]hese temperatures are substantially below those required for effective operations of [the] heat pump."

Although Pease acknowledged the importance of Long's

temperature estimates at trial, he never forwarded the information to Bennett or plaintiff. Unaware that a water supply of the critical temperature for the winter months was unavailable, Bennett recommended, and plaintiff installed, the templifier system at a claimed cost of $419,621. Although it was tested in early 1986, the lake water temperature hovered at only 35 to 35.5 degrees Fahrenheit, and, therefore, the templifier kept shutting down. Eventually, plaintiff abandoned this heating system altogether and instead employed the existing electric boiler.

In a 1986 meeting to determine why the system was inoperational, Pease, for the first time, informed the templifier project consultants of the contents of Long's letter. Subsequently, plaintiff, hoping to salvage the project, asked Bennett to determine the feasibility of running the templifier with a supply of intake water below 38 degrees Fahrenheit. Bennett concluded that without a water supply of at least 38 degrees Fahrenheit, the system could not be safely or economically operated.

Plaintiff thereupon commenced this lawsuit for breach of contract and negligence against defendant. Following trial, Supreme Court dismissed plaintiff's negligence claim and the jury awarded it $293,285 in damages on the contract cause of action.

In addition to highlighting an erroneous evidentiary ruling, defendant urges on appeal that Supreme Court improperly denied its motions to dismiss the complaint in its entirety, made after the close of plaintiff's evidence and again after the proof was concluded, to set aside the verdict. We disagree and affirm.

There was sufficient proof that a contract existed between the parties, the terms of which defendant breached, and that the breach caused damages. First, the letter agreement dated August 31, 1983, authored by Pease as project manager of defendant was signed by Norman Wolgin, one of the three partners of plaintiff. Although Wolgin did not specifically indicate that he was signing on behalf of plaintiff, sufficient proof was adduced at trial to support the implicit jury finding that Wolgin was acting on the partnership's behalf. Another partner of plaintiff testified that the letter contract was between defendant and plaintiff. Moreover, plaintiff owned the resort, contracted for its renovation including the heating system, obtained the necessary environmental operation permits, and funded the templifier design, construction and installation.

Second, plaintiff presented sufficient evidence to present a jury question concerning whether defendant failed to carry out a function it had contracted to perform. Pease, defendant's representative, acknowledged that "it would have been very important for [Bennett] to know, in October of 1983, that the temperature under the ice of Lake George was 36 degrees to 66 feet". And although defendant had agreed to undertake a "review of data files to develop Lake George temperature profiles and define natural temperature fluctuations", the jury could have found Pease's failure to disclose Long's temperature data, which revealed that the contemplated heating system would be infeasible, to be a material breach of the contract.

Third, defendant's argument that plaintiff failed to demonstrate any damages resulting from defendant's breach is unavailing. Bennett engineers testified that they would have advised against installing the templifier had they known that the temperature at the intake location was 36 degrees Fahrenheit. Moreover, other witnesses for plaintiff confirmed that the system had not been operable since its installation and that it was neither economically nor technically feasible to operate at temperatures below 38 degrees Fahrenheit.

As it cannot be said that no rational juror could find in plaintiff's favor based on the evidence presented, Supreme Court correctly denied defendant's motion to dismiss this cause of action (see, Dooley v Skodnek, 138 AD2d 102, 104; O'Neil v Port Auth., 111 AD2d 375, 376). Nor do we believe that the jury so incorrectly assessed the evidence (see, Cohen v Hallmark Cards, 45 NY2d 493, 498) that Supreme Court should have set the verdict aside.

Lastly, the parties agree that Supreme Court impermissibly permitted plaintiff's attorney to read portions of Wolgin's examination before trial into evidence (see, CPLR 3117 [a] [3] [ii]). The majority of that testimony addressed Wolgin's concern respecting the cost of defendant's services; the remainder dealt with a conversation regarding who would be hired to determine the location of the proper intake temperature, which conversation Wolgin had with a Bennett employee. As the substance of this transcript excerpt was merely redundant, and to a great degree had already been independently elicited by defense counsel, we view its erroneous admission to be harmless (see, CPLR 2002).

Amended judgment affirmed, with costs. Casey, J. P., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.