MURRAY WALTER, INC., Respondent-Appellant, v SARKISIAN BROTHERS, INC., et al., Appellants, and JAMES F. MATTHEWS, Respondent.

Third Department, October 29, 1992

### APPEARANCES OF COUNSEL

*Butler, Allen, Clark & Place (Earl D. Butler* of counsel), Vestal, for appellants.

*G. Peter Van Zandt,* Binghamton, for respondent.

*Menter, Rudin & Trivelpiece, P. C. (William F. Baker* and *Gerald J. Matthews* of counsel), Syracuse, for respondent-appellant.

## OPINION OF THE COURT

LEVINE, J. P.

As is more fully set forth in our previous decision in this case *(see,* 107 AD2d 173), in January 1973, plaintiff and the late Murray Walter, then plaintiff's president, chief executive officer and holder of 100 shares in plaintiff's capital stock (constituting a one-third interest), entered into a confidential agreement with defendants Sarkisian Brothers, Inc. (hereinafter SBI) and George Sarkisian and the late John Sarkisian.* The agreement provided that plaintiff would redeem the 100 shares of plaintiff's stock, jointly owned by George and John Sarkisian, for $800,000, with the proviso that the transaction would be falsely reported on plaintiff's tax returns as payment for the Sarkisians' share of profits in an unrelated joint venture construction project and, thus, be tax deductible as an ordinary business expense. The result of the scheme would have been to permit plaintiff to save $400,000 in taxes, so that its net cost of redeeming the Sarkisian shares would be $400,000. In order to safeguard against the disallowance of the deduction by tax authorities, the Sarkisians promised to report the payment as ordinary income received from the joint venture. Furthermore, the Sarkisian defendants agreed to indemnify plaintiff for any additional tax liability it might incur in the event that the deduction was disallowed, up to a maximum of $400,000, "less such income taxes thereon * * * actually paid by [the Sarkisian defendants]".

In contravention of the foregoing agreement, the Sarkisian defendants reported the transaction as follows: (1) a sale by George and John Sarkisian of their 100 shares in plaintiff to SBI for $75,000 reflecting a capital gain to them of $25,000 over what they had originally paid for their shares in plaintiff, and (2) plaintiff's redemption of SBI's newly purchased shares for $805,000, giving rise to a capital gain of $730,000 which SBI was able partly to offset by a capital loss in excess of $300,000 from the sale of shares in the publicly traded capital

---

* John Sarkisian is represented in this action by the coexecutors of his last will and testament.

stock of a corporation referred to at the trial herein as "Great Western".

Some 10 months after the redemption of the 100 shares in plaintiff held by the Sarkisians, plaintiff also acquired the 100 shares of its capital stock held by defendant James F. Matthews for $730,000, leaving Walter as the sole remaining stockholder. However, $250,000 of the purchase price was held in escrow pursuant to two agreements, dated October 8 and 15, 1973, respectively, as a fund to defray up to one half of any net additional tax liability incurred by plaintiff in the event of a disallowance of the $800,000 payment to the Sarkisian defendants as an ordinary business expense deduction. The escrowed $250,000 was released to Matthews on completion of an initial 1973 Internal Revenue Service (hereinafter IRS) audit of plaintiff's Federal tax returns, in which the claimed deduction was left intact.

Despite having survived the 1973 IRS audit, however, the true nature of the Sarkisian stock redemption deal was exposed as a result of an IRS investigation of the transaction in 1975. Plaintiff ultimately settled all tax claims, without the imposition of any criminal or civil fraud sanctions, by the payment to Federal and State tax authorities of additional taxes and interest in the aggregate sum of more than $850,000. When the Sarkisian defendants and Matthews rejected plaintiff's claims for indemnity for this additional tax liability pursuant to their respective agreements, this action was commenced.

On the earlier appeal (see, 107 AD2d 173, supra) we upheld Supreme Court's denial of the Sarkisian defendants' motion for summary judgment based upon their defense of illegality as to the indemnity agreement, holding that there were triable issues of fact as to whether the tax evasion aspects of the parties' agreement barred enforcement of indemnification.

Following the trial, the jury rendered a verdict rejecting the Sarkisian defendants' illegality defense and imposing liability against them under the indemnification agreement for $400,000, minus $160,000, representing the sum these defendants actually paid in taxes on the redemption of their shares in plaintiff, for which they were entitled to a credit under that agreement. The jury also returned a verdict of no cause of action on plaintiff's claim for indemnity against Matthews. These appeals ensued.

■ The Sarkisian defendants urge reversal and dismissal of

plaintiff's claim on the ground that their defense of illegality was established as a matter of law. From our review of the trial transcript, however, there was credible evidence from which the jury could reasonably reject their illegality defense, under Supreme Court's instructions on that issue, to which no exception was taken. Notably, there was testimony that the Sarkisian defendants were at least equally culpable in the formulation and execution of the tax evasion scheme, namely, (1) that George Sarkisian initiated the scheme in suggesting that it would be acceptable ostensibly to structure the transaction as giving rise to an ordinary business expense deduction for plaintiff and the receipt of ordinary income to the Sarkisian defendants because they had offsetting losses for the same taxable year, (2) that the Sarkisian defendants were exerting economic duress upon Walter for a redemption of their shares at an inflated price by threatening the financial ruination of plaintiff, (3) that the Sarkisian defendants only reneged on their agreement falsely to report the redemption payment as ordinary income upon being advised that their capital losses on the Great Western stock could not be used as an offset against ordinary income but only against capital gains, and (4) that even after deciding to disclose that the true nature of the transaction was a stock redemption rather than profit from a joint venture, the Sarkisian defendants falsely reported the transfer of stock from George and John Sarkisian individually to SBI before the shares were redeemed, apparently to maximize the use of offsetting capital losses for tax purposes. Moreover, the jury could also have concluded that the denial of enforcement of the indemnification agreement would work a substantial forfeiture against plaintiff by reflecting an ultimate cost of redeeming the Sarkisian shares many times greater than the net of $400,000 which the parties contemplated when they entered into their agreement, while permitting the Sarkisian defendants substantially to retain the fruits of the parties' illegal bargain. These factors and other evidence amply sufficed to permit the jury to reject the illegality defense (see, Murray Walter, Inc. v Sarkisian Bros., 107 AD2d 173, 177-178, supra; see also, Artache v Goldin, 133 AD2d 596, 599). Because there was a rational view of the evidence to support the jury's determination on this issue, reversal and dismissal of plaintiff's claim against these defendants is not warranted (see, Cohen v Hallmark Cards, 45 NY2d 493, 499). Nor can we say that the jury incorrectly assessed the evidence, much of which turned on credibility

determinations, so as to require a new trial *(see, Green Is. Assocs. v Lawler, Matusky & Skelly Engrs.,* 170 AD2d 854, 857).

■ We arrive at a different conclusion, however, with respect to the jury's finding that the credit the Sarkisian defendants were entitled to for taxes actually paid on the transaction was $160,000. Once the tax evasion scheme was fully exposed, the IRS performed a full audit of the tax return for each of the Sarkisian defendants and recalculated their respective capital gains under the true facts of the transaction. Based upon those calculations, additional taxes were assessed against George and John Sarkisian, after giving them the benefit of income averaging. IRS documents reflecting the redeterminations were received in evidence. Moreover, plaintiff and the Sarkisian defendants each offered expert testimony on the appropriate amount of Federal and State taxes payable by George and John Sarkisian on the redemption of their shares. The foregoing constituted the principal sources of evidence on the proper credit for taxes paid by the Sarkisians, all of which was significantly higher than the $160,000 found by the jury. Therefore, we conclude that the verdict on this issue was against the weight of the evidence. In our view, the best evidence of taxes paid on the transaction was that expressed in the opinion of plaintiff's expert, i.e., $215,000. Consequently, the judgment against the Sarkisian defendants should be reversed and a new trial ordered solely on the issue of the appropriate credit against the $400,000 indemnification for taxes actually paid by said defendants on the transaction, unless plaintiff stipulates, within 30 days of service of the order herein with notice of entry, to reduce the judgment accordingly.

■ Finally, we turn to the appeal by plaintiff of the verdict dismissing its indemnification cause of action against Matthews. As conceded by the opposing parties on this claim, the two letter agreements forming the basis of the claim are ambiguous as to whether it was intended that any obligation to indemnify on Matthews' part survived the satisfactory conclusion of the then-pending IRS audit and the release of the $250,000 held in escrow. Therefore, plaintiff does not contend that the issue was improperly submitted to the jury. Its appeal is limited to the contention that Supreme Court erred in ruling against the admissibility of a letter dated February 1, 1974 from plaintiff's attorney to David Crowley, who was Matthews' attorney and also the escrow agent,

reciting that, due to the satisfactory conclusion of the IRS audit, it was appropriate to release the escrowed funds, but adding as a proviso that the "ultimate liability still stands" to indemnify plaintiff in the event of any subsequent reopening of the audit and disallowance of the payment to the Sarkisian defendants as a tax deductible business expense. We disagree. There was never any manifestation of assent to the foregoing assertion in the letter of Matthews' continued obligation to indemnify. Moreover, the communication was sent well after contract formation. Indeed, the testimonial and documentary evidence at the trial supports Supreme Court's conclusion that the letter was sent even after the escrowed funds had already been released with plaintiff's consent, as conceded by plaintiff upon oral argument. Accordingly, Supreme Court properly ruled that the letter was not admissible extrinsic evidence of the parties' mutual intent in entering into their agreement, but merely a unilateral expression of one party's postcontractual subjective understanding of the terms of the agreement and, therefore, was not probative as an aid to the interpretation of the contract *(see, Hudson-Port Ewen Assocs. v Chien Kuo,* 165 AD2d 301, 305, *affd* 78 NY2d 944).

MERCURE, MAHONEY, CASEY and HARVEY, JJ., concur.

Ordered that the judgment in favor of plaintiff against defendants Sarkisian Brothers, Inc., George Sarkisian individually and George Sarkisian and Renee S. Reilly, as coexecutors of the last will and testament of John Sarkisian, deceased, is reversed, without costs, and a new trial ordered solely on the issue of the amount of the credit, against the $400,000 awarded plaintiff on its indemnification cause of action, that said defendants are entitled to Federal and State income taxes actually paid on plaintiff's redemption of their shares in plaintiff's capital stock, unless, within 30 days of service of the order herein, plaintiff stipulates to reduce the said judgment to $185,000, plus costs and disbursements and prejudgment interest from July 1, 1982, in which event said judgment is affirmed, with costs to plaintiff against said defendants; judgment in favor of defendant James F. Matthews affirmed, with costs to said defendant against plaintiff.