■ DUDLEY C. BARROW, Respondent, v LAWRENCE UNITED CORPORATION et al., Appellants. [648 NYS2d 818] —Peters, J. Appeal from a judgment of the Supreme Court (Conway, J.), entered September 27, 1995 in Rensselaer County, upon a verdict rendered in favor of plaintiff.

On a previous appeal in this action, we reversed an order granting plaintiff summary judgment based upon our conclusion that the purchase price adjustment clause in a contract for business assets acquisition between defendant Lawrence United Corporation (hereinafter LUC) as buyer, and Geer-Stillman Associates, Ltd. (hereinafter GSA) as seller, was ambiguous (see, Barrow v Lawrence United Corp., 146 AD2d 15, 17-18). According to the provision, the purchase price of the assets would be adjusted up or down based upon "actual 'net * * * (annualized) commissions' " earned by GSA from policies with an effective date during the first full year of operation after acquisition (1985). Such commissions were defined as "gross annual commissions, earned or received anytime". While other commissions were either specifically included or excluded, the contract language did not specifically include commissions on new accounts produced by GSA during the first full year following acquisition by LUC.

At trial, upon the close of plaintiff's proof, Supreme Court dismissed various causes of action, leaving to the jury the sole question of whether plaintiff proved "that the parties * * * intended to include commissions earned or received in 1985 on new business written in 1985 in the [calculation of] net annual commissions", the agreed basis to adjust the purchase price. After the entry of a verdict in favor of plaintiff, defendants contend on appeal that Supreme Court erred when it refused to grant a dismissal at the close of plaintiff's case and when it

later refused to grant a motion to set aside the verdict.* We disagree. Upon our review of the evidence in a light most favorable to plaintiff (*see, Rhabb v New York City Hous. Auth.*, 41 NY2d 200), we find that a dismissal at the close of plaintiff's proof was not warranted since plaintiff had made out a prima facie case alleging a breach of contract (*see, Green Is. Assocs. v Lawler, Matusky & Skelly Engrs.*, 170 AD2d 854). Where, as here, "it cannot be said that no rational juror could find in plaintiff's favor based on the evidence presented" (*supra*, at 857), the motion must be deemed to have been properly denied.

We similarly reject defendants' contention that the jury verdict was not supported by sufficient evidence. We cannot conclude that "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499).

Preliminary negotiations underlying this agreement revealed that plaintiff had rejected a proposal by defendant Albert W. Lawrence to pay 1.5 times the total prior 12 months of agency commissions as the purchase price. Thereafter, evidence supported plaintiff's contention that negotiations continued when he was contacted by Robert Menikheim, president of LUC, to review an outline of another proposed financial arrangement, this time including a sample purchase and sale agreement. These documents show, at least preliminarily, that LUC offered to condition the purchase price of GSA's assets upon a formula which defined "net annual commission income" as including both new and renewal business in the year after acquisition.

On June 29, 1984, Menikheim wrote to plaintiff that LUC "would be amenable to a provision that worked both ways, i.e. increase or decrease in purchase price based on *actual* income for the first year" (emphasis supplied). Menikheim thereafter forwarded a memorandum of agreement to plaintiff which Menikheim described as containing "[a] provision for adjusting the purchase price based on actual commissions during the first year". The accompanying memorandum of agreement sought to reflect such understanding when it detailed that the purchase price will be based on "the actual 'net annual commissions' of the Seller during the first year subsequent to the transfer date", with " 'net annual commissions' " defined similarly to that found in the final memorandum of agreement now under scrutiny.

---

* Damages had been stipulated to between the parties during the trial.

Contemporaneously with the execution of the purchase agreement, LUC and plaintiff entered into an employment agreement, effective the same date, whereby plaintiff was to be employed to manage the Geer-Stillman division of LUC following the purchase. The employment agreement provided plaintiff with a base salary and, *inter alia*, a percentage of all new commissions earned after January 1, 1985.

Since the jury was instructed to read the employment and purchase agreement together, we cannot conclude that " ' "the evidence so preponderate[d] in favor of the [defendants] that [the verdict] could not have been reached on any fair interpretation of the evidence" ' " (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746, quoting *Moffatt v Moffatt*, 86 AD2d 864, *affd* 62 NY2d 875). With the jury crediting plaintiff's testimony, the documentary evidence and concessions made by Lawrence, we decline to disturb the verdict.

We also find Supreme Court's charge to the jury to have properly incorporated all pertinent legal and factual contentions. We agree with the court that many of defendants' specific requests were simply not supported by the record and, as to those which were, that they were properly accommodated by the charge given. We similarly reject defendants' contention that the court improperly curtailed Lawrence's testimony regarding his subjective intent for entering into the agreement (*see, Traver v Betts*, 83 AD2d 653, *lv denied* 55 NY2d 604). As to all other issues raised, we have reviewed them and find them meritless.

Cardona, P. J., Mercure, Crew III and White, JJ., concur. Ordered that the judgment is affirmed, with costs.