Brandy BLACKLEDGE, Plaintiff,

v.

John CARLONE, Matthew Kelly, John Flynn, and George Kozieradzki, Defendants.

No. CIV A. 3:99CV2229JCH.

United States District Court,
D. Connecticut.

Jan. 25, 2001.

*RULING ON DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND FOR REMITTITUR OR NEW TRIAL IN THE ALTERNATIVE [DKT. NO. 40] AND PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEYS' FEES AND COSTS [DKT. NO. 43]*

HALL, District Judge.

This action was commenced in November 1998 by the plaintiff Brandy Blackledge against four New Britain police officers, Officers John Carlone, Matthew Kelly, John Flynn, and George Kozieradzki. The plaintiff alleged that Flynn and Carlone subjected her to excessive force in violation of her Fourth Amendment rights and that all of the defendants failed to intervene.

The case was tried to a jury on September 7–8, 2000. On September 8, 2000, the jury returned a verdict in favor of the plaintiff against Carlone, awarding the plaintiff $1,000 in compensatory damages and $40,000 in punitive damages. *See* Jury Verdict Form (Dkt. No. 39) at ¶¶ 1,7–9. The jury rendered a verdict for the other three defendants. *Id.* at ¶¶ 3–6.

Now before the court is Carlone's Motion for Judgment Notwithstanding Verdict and for New Trial or Remittitur in the Alternative [Dkt. No. 40] and the plaintiff's Application for Award of Attorneys' Fees and Costs [Dkt. No. 43]. For the foregoing reasons, the defendant's motion is denied, and the plaintiff's application is granted in part and denied in part.

## I. Facts

In her section 1982 suit, the plaintiff alleged that she was deprived of her Fourth Amendment right to be free of the use of excessive force when Officers Flynn and Carlone each sprayed her in the face with cap stun after a traffic stop in the early morning hours of January 20, 1997. The four officer defendants stopped a car in which the plaintiff was a passenger.

Evidence was presented at trial that, after the plaintiff stepped out of the vehicle in which she was a passenger and confronted the officers, the plaintiff was restrained and transported to a police cruiser by Flynn and Kelly. Before placing the plaintiff in the back seat of the cruiser, Flynn sprayed the plaintiff once in the face with cap stun because she was resisting.

Thereafter, the plaintiff was yelling and kicking in the backseat of the patrol cruiser. She testified that she was having a strong reaction to the cap stun, that she could not see, and that she was having difficulty breathing. At the time, the plaintiff's arms were handcuffed behind her back. Carlone then approached the cruiser, opened the cruiser's door and, without checking on the plaintiff's physical condition, sprayed the plaintiff in the face with cap stun.

## II. Defendant's Motion for Judgment as a Matter of Law

### A. The punitive damages award is supported by the evidence

■ Carlone moves for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) on the ground that the plaintiff failed to adduce evidence at trial to support a finding that Carlone's actions constituted wanton, willful, or malicious actions toward the plaintiff or reckless disregard of the plaintiff's constitutional right to be free from the use of excessive force. Carlone argues that the punitive damages award entered against him is unsupported by the evidence and that, on the issue of his liability for punitive damages, there is but one conclusion the jury could reasonably have reached.

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis. The standard under Rule 50 is the same as that for summary judgment: A court may not grant a Rule 50 motion unless "the evidence is

such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir.1998) (citation and internal quotation marks omitted). Thus, in deciding such a motion, "the court must give deference to all credibility determinations and reasonable inferences of the jury ... and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998) (citations omitted). In short, the court cannot "substitute its judgment for that of the jury." *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir.1995) (*"Fletcher I"*) (citations omitted). Rather, judgment as a matter of law may only be granted if:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.

*Galdieri–Ambrosini*, 136 F.3d at 289 (quoting *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1154 (2d Cir.1994)) (internal quotation marks omitted).

Moreover, "weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'" *This Is Me, Inc.*, 157 F.3d at 142 (citation omitted). The court "must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in his favor." *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir.

1998) (citation omitted). Thus, "[a] party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden." *Id.*

Furthermore, Rule 50(b) provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59.

Procedurally, then, "'[a] motion for j.n.o.v. is technically a renewal of a motion for a directed verdict.' ... Thus, Federal Rule of Civil Procedure 50(b) generally proscribes judgment n.o.v. on any ground not specifically raised in an earlier motion for a directed verdict at the close of all the evidence." *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 112 (2d Cir.1996) (citations omitted).

The Second Circuit has further articulated the contours of the relationship between issues raised in motions for judgment as a matter of law at trial and post-trial:

> Under Rule 50(a), a party may move for judgment as a matter of law ("JMOL") during trial at any time prior to the submission of the case to the jury. Fed.R.Civ.P. 50(a)(2). The Rule requires the party making such a motion to "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." *Id.* After an unfavorable verdict, Rule 50(b) allows the party to "renew" its motion. "The posttrial motion is limited to those grounds that were 'specifically raised in the prior motion for [JMOL]'"; the movant is not permitted to add new grounds after trial....

Although Rule 50(a) "does not define how specific" the motion must be, ..., the purpose of requiring the moving party to articulate the ground on which JMOL is sought "is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury," .... "The articulation is necessary ... so that the responding party may seek to correct any overlooked deficiencies in the proof." Fed.R.Civ.P. 50 Advisory Committee Note (1991). Accordingly, the JMOL motion must at least identify the specific element that the defendant contends is insufficiently supported.

*Galdieri–Ambrosini,* 136 F.3d at 286 (citations omitted). "[I]f an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is 'required to prevent manifest injustice.'" *Cruz,* 34 F.3d at 1155 (citation omitted). At the close of evidence and even after the return of the jury verdict, Carlone made no motion for a directed verdict or for judgment as a matter of law. Accordingly, Carlone must prove that judgment as a matter of law is required here to prevent "manifest injustice." *Galdieri–Ambrosini,* 136 F.3d at 287 (citing *Cruz,* 34 F.3d at 1155).

Carlone now moves for judgment as a matter of law on the ground that the punitive damages award entered against him is contrary to the weight and sufficiency of the evidence, *i.e.,* that there was such an overwhelming amount of evidence in favor of the defendant that reasonable and fair minded persons could not arrive at a verdict against him. The court concludes that Carlone is not entitled to the entry of judgment as a matter of law in his favor on the issue of punitive damages.

The court instructed the jury that "[w]hether you decide to award punitive damages against a defendant should be based on whether you find that that defendant engaged in either: (1) Willful, wanton or malicious violation of the plaintiff's rights, or (2) Reckless disregard of wheth-

er or not his actions were in violation of the plaintiff's rights." Jury Charge (Dkt. No. 38) at 34. The court further instructed that, "[b]y malicious or wilful, I mean that an officer's actions were inspired by a purpose on the part of that officer to do the plaintiff harm or subject her to public humiliation, and that the officer had an intent to bring about such a result," and that, "[i]n determining whether a defendant's conduct was malicious or wilful, you must consider what he did in light of all the circumstances, for malice and wilfulness are often not susceptible of proof by direct evidence, but may be found as an inference reasonably drawn from all the facts." *Id.* Finally the court instructed the jury that "I said to you also that a plaintiff is entitled to punitive damages where a defendant's acts are wanton, and by that I mean a reckless disregard of the consequences which might follow from such acts." *Id.* Thus, the court instructed that, "[i]f Ms. Blackledge has proved to you that the use of excessive force or the failure to intervene to protect the plaintiff from the use of excessive force by any one or more of the defendants was malicious or wilful or wanton as I have explained those words to you, you must determine what additional amount, if any, she is entitled to recover from each such defendant as punitive damages." *Id.* at 34–35.

No manifest injustice follows from letting stand the jury's verdict that Carlone acted with reckless disregard of whether or not his actions were in violation of the plaintiff's right to be free from the use of excessive force. The jury heard evidence that Carlone approached the police cruiser in which the plaintiff, having already been cap stunned once, was handcuffed in the backseat. Carlone opened the cruiser's door and sprayed the plaintiff in the face again, without checking on the plaintiff's physical condition. Faced with this testimony, the court cannot say that, on the issue of punitive damages against Carlone, there is such a complete absence of evidence supporting the verdict that the

jury's findings could only have been the result of sheer surmise and conjecture, nor that there is such an overwhelming amount of evidence in favor of Carlone that reasonable and fair minded persons could not arrive at a verdict against him. Carlone's motion for judgment as a matter of law is therefore denied.

### B. The punitive damages award is not excessive

Carlone also argues that the punitive damages awarded against him are excessive and are unreasonably disproportionate to the actual damages proven in the case. Accordingly, Carlone requests a new trial be ordered on the issue of punitive damages which was "infected by prejudice and passion or other improper motive[s] on the part of the jury," or, in the alternative, Carlone seeks a remittitur. *See* Motion for Judgment Notwithstanding Verdict and for New Trial or Remittitur in the Alternative (Dkt. No. 40) at 10.

"'If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount.'" *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996) (citation omitted). However, "[w]here a jury has awarded damages in an amount considered excessive by the trial court, '[i]t is not among the powers of the ... court ... simply to reduce the damages without offering the prevailing party the option of a new trial.'" *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 914–15 (2d Cir.1997) (citations omitted).

In determining whether a jury's punitive damage award is excessive, the court is mindful that the United States Constitution "imposes a substantive limit on the size of punitive damages awards." *Honda Motor Co., Ltd. v. Oberg,* 512 U.S. 415, 420, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994) (citations omitted). This is because "[p]unitive damages pose an acute danger of arbitrary deprivation of property." *Id.* at 432, 114 S.Ct. 2331. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that" may be imposed on a defendant. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (footnote omitted). "Only when an award [of punitive damages] can fairly be categorized as 'grossly excessive' in relation to [legitimate interests in punishment and deterrence] does it enter the zone of arbitrariness that violates [due process]." *Id.* at 568, 116 S.Ct. 1589 (citing *TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 456, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (plurality opinion)). Similarly, in *TXO Prod. Corp. v. Alliance Res. Corp.,* a plurality of the Supreme Court "eschewed an approach that concentrates entirely on the relationship between actual and punitive damages." 509 U.S. at 460, 113 S.Ct. 2711. Rather, the plurality held "[i]t is appropriate to consider the magnitude of the potential harm that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred." *Id.*

Following *Gore,* the Second Circuit has held that, "[a]lthough *Gore* examined the excessiveness of punitive damages awarded in a state court, the universal premise of [the] Supreme Court's due process reasoning suggests that the same considerations apply equally to the review of punitive damages awarded in federal court." *Lee,* 101 F.3d at 809 n. 2 (citing *Gore,* 517 U.S. at 574, 116 S.Ct. 1589). The Second Circuit has applied these due process principles in holding that a punitive damage award may be found to be excessive "when the amount is 'so high as to shock the judicial conscience and constitute a denial of justice.'" *Id.* at 808 (citations omitted). "In gauging excessiveness, [a court] must

keep in mind the purpose of punitive damages: 'to punish the defendant and to deter him and others from similar conduct in the future.'" *Id.* (citation omitted). A court must ensure "that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Id.* (citations and internal quotation marks omitted). Specifically, "punitive damages are available under section 1983 to advance the statute's purpose of securing the protection of constitutional rights. An award of punitive damages punishes a defendant who has acted intentionally or recklessly to deny a plaintiff his protected rights, ... and helps secure rights for others by deterring future violations ...." *McFadden v. Sanchez,* 710 F.2d 907, 913 (2d Cir.1983) (citations omitted).

■ "Excessive punitive damage awards should be cut back where there is no specific and easily quantifiable error underlying the award, for damages should not be permitted to go beyond that amount reasonably necessary to secure the purposes of such awards, and thus to become in part a windfall to the individual litigant." *Aldrich v. Thomson McKinnon Secs., Inc.,* 756 F.2d 243, 249 (2d Cir.1985) (citation omitted). To assess the reasonableness of a jury's punitive damages award, the Second Circuit has instructed courts to consider three guideposts established in *Gore. Lee,* 101 F.3d at 809. "These guideposts are: '(1) the degree of reprehensibility of the tortious conduct, (2) the ratio of punitive damages to compensatory damages, and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases.'" *Mathie v. Fries,* 121 F.3d 808, 816 (2d Cir.1997) (quoting *Lee,* 101 F.3d at 809). The Second Circuit has also held that, "[t]he Supreme Court's guideposts in *Gore,* though marking outer constitutional limits, counsel restraint with respect to the size of punitive awards even as to the nonconstitutional standard of excessiveness." *Id.* at 817.

■ Turning to these guideposts, the court first notes that the $40,000 award comports with the reprehensibility of Carlone's actions in cap stunning the plaintiff, who had already been cap stunned in the face once, while she was handcuffed in the back seat of a police cruiser. The Second Circuit has identified several "aggravating factors," extracted from the Supreme Court's *Gore* decision, "that are 'associated with particularly reprehensible conduct' and contribute to the sense that 'some wrongs are more blameworthy than others.'" *Lee,* 101 F.3d at 809 (quoting *Gore,* 517 U.S. at 575, 576, 116 S.Ct. 1589); *see also Gore,* 517 U.S. at 580, 116 S.Ct. 1589 (aggravating factors help to identify "egregiously improper conduct" warranting an award of punitive damages). "Aggravating factors include (1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Lee,* 101 F.3d at 809 (citing *Gore,* 517 U.S. at 576–77, 116 S.Ct. 1589). Here, Carlone's actions were certainly violent toward the plaintiff, who was largely physically helpless and secured in police custody at the time he cap stunned her.

Second, Carlone's due process rights are not violated by the fact that the ratio of punitive damages to compensatory damages awarded against Carlone is 40–to–1. The Supreme Court has noted that "we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award.... Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Gore,* 517 U.S. at 582, 116 S.Ct. 1589 (citation and footnote omitted). The Court further noted that "[w]e need not, and indeed we cannot, draw a mathemati-

cal bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of reasonableness ... properly enter[s] into the constitutional calculus." *Id.* at 582–83, 116 S.Ct. 1589 (citation and internal quotation marks omitted). "In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis." *Id.* at 583.

The court finds that the 40–to–1 ratio here is such a case. This ratio does not approach the "breathtaking 500 to 1" ratio which the *Gore* Court concluded "must surely 'raise a suspicious judicial eyebrow.'" *Id.* (citation omitted). Moreover, the Second Circuit has held that the fact that the *Gore* "Court found the 500 to 1 ratio in that contract dispute to be 'breathtaking' ... does not necessarily control the fair ratios in a § 1983 case." *Lee*, 101 F.3d at 811 (citation omitted). The Second Circuit has held "that punitive damages may be awarded in a § 1983 case, even if the compensatory damages are only nominal." *Id.* (citation omitted). The Second Circuit noted that "[t]he Supreme Court's observations in *Gore* reinforce that view: violations of civil rights may very well be 'particularly egregious' acts that result in only 'a small amount of economic damages' or injuries whose monetary value is 'difficult to determine.'" *Id.* (citation omitted). The court concludes that a 40–to–1 ratio is not excessive in this civil rights case.

Finally, the court notes that the third *Gore* guidepost arises from the concern that, "[w]hen penalties for comparable misconduct are much slighter than a punitive damages award, it may be said that the tortfeasor lacked 'fair notice' that the wrongful conduct could entail a substantial punitive award." *Id.* at 811 (citations omitted). The plaintiff alleges that Carlone could have been held accountable for felony assault, or assault with a weapon, and faced a fine of up to $10,000 or imprisonment if convicted on such a charge. As

in *Lee*, however, the court concludes that "the civil and criminal penalties understate the notice, because the misconduct at issue here was committed by a police officer," and Carlone's training as a police officer gave him notice as to the "gravity of misconduct under color of his official authority, as well as notice that such misconduct could hinder his career." *Id.* Unlike the police officer defendant in *Lee*, however, against whom the jury rendered a $200,000 punitive damage award for malicious prosecution, the punitive damages award against Carlone does not "amount[ ] to the sacrifice of the better part of a policeman's after-tax pay for a decade," for which "nothing could conceivably have prepared him." *Id.*

The court therefore finds that the jury's punitive damages award against Carlone satisfies these guideposts. "This does not end [the] inquiry, however, since ..., even where the punitive award is not beyond the outer constitutional limit marked out, however imprecisely, by the three *Gore* guideposts," the court must "review punitive awards for excessiveness in applying federal statutes such as section 1983." *Mathie*, 121 F.3d at 816–17 (citation omitted). "That task requires comparison with awards approved in similar cases, ... to determine, as with compensatory awards, whether the punitive award is 'so high as to shock the judicial conscience and constitute a denial of justice.'" *Id.* at 817 (citation omitted). Again, "[i]n making that comparison, [the court must] bear in mind that the purpose of punitive awards is to punish the wrongdoer and to deter others." *Id.* (citations omitted).

In *King v. Verdone*, Docket No. 3:97–cv–1487 (D.Conn.1999) (Squatrito, J.), the "jury rendered a verdict for the plaintiff on his excessive force civil rights claim under 42 U.S.C. § 1983 based on his testimony that he was maced, kicked in the face and body, punched and verbally tormented by the two defendants following his failed attempt to escape from a correctional facility. The jury awarded the

plaintiff $75,000 in compensatory damages and found each defendant liable for $1 million in punitive damages." *Conn. L. Trib.*, Nov. 15, 1999. "The court denie[d] the defendants' motions for judgment and for a new trial because there was sufficient evidence for a reasonable jury to find for the plaintiff," but "the court grant[ed] their motion for remittitur." *Id.* "Although the record demonstrates conduct by the defendants that was violent and carried out with intentional malice, the $2 million in punitive damages shocks the judicial conscience. The maximum punitive damages award against each defendant that the court would uphold as not excessive is $150,000." *Id.* In *Lieberman v. Dudley*, Docket No. 3:95–cv–2437, 1998 WL 740827, at *1–*3 (D.Conn. July 27, 1998) (Nevas, J.), the district court upheld a jury verdict awarding a plaintiff $15,000 in punitive damages against a police officer that "kicked him in the head after [the plaintiff] had fallen to the ground," as a result of which the plaintiff "suffered serious injuries."

In *Lee*, 101 F.3d at 812–13, the court of appeals reduced a punitive damages award to a plaintiff who was the victim of a police assault and malicious prosecution from $200,000 to $75,000. In *Ismail v. Cohen*, a punitive damages award of $150,000 was upheld for a plaintiff who "suffered two displaced vertebrae, a cracked rib, and serious head trauma at the hands of the defendant police officer, was held in custody for approximately 60 hours, and was made to stand trial on three criminal charges (on all of which he was acquitted)." *Lee*, 101 at 812 (citing *Ismail v. Cohen*, 899 F.2d 183, 185, 187 (2d Cir. 1990)). In *O'Neill v. Krzeminski*, the court of appeals upheld "the jury's punitive damages award of $185,000" against "two police officers (one wielding a blackjack) [who] struck O'Neill about the face and head while he was handcuffed," while "a third officer watched," before "[t]he officers ... dragged O'Neill by the throat to a holding cell, and left him there, bleeding" and "[o]ne of the officers entered the cell

some time later and screamed at O'Neill." *Lee*, 101 F.3d at 812 (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 10 (2d Cir.1988)). In *King v. Macri*, the court of appeals reduced from $175,000 to $100,000 the punitive damages awarded to a plaintiff whom a court security officer "continued to punch ... after [the plaintiff] was handcuffed and lying on the ground" and whom "was then strip-searched and delivered to Rikers Island that evening, where he remained in pre-trial detention for two months" before "[a]ll charges were either dropped prior to trial, dismissed, or resolved by a jury verdict of acquittal." *Lee*, 101 F.3d at 812 (citing *King*, 993 F.2d 294, 296, 297 (2d Cir.1993)).

In light of these awards in similar cases from this circuit, the court concludes that the $40,000 award against Carlone is not excessive. The police misconduct in several of these similar cases may be more egregious that Carlone's misconduct in this case, but the punitive damages awarded in those cases are correspondingly higher than that award to the plaintiff in the instant suit. As such, the court does not find the $40,000 in punitive damages awarded to the plaintiff to be so high as to shock the judicial conscience and constitute a denial of justice. As such, Carlone's request for a remittitur or, alternatively, the order of a new trial if the plaintiff did not accept damages in a reduced amount, is denied.

## III. 42 U.S.C. § 1988 Award of Attorneys' Fees and Costs

The plaintiff seeks an award of attorneys' fees and costs under 42 U.S.C. § 1988. Section 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983, ... the court, in its discretion, may allow the prevailing party ...a reasonable attorney's fee as part of the costs ...."

### A. Prevailing party status

Under section 1988, for a plaintiff to be considered a "prevailing party," the law is

well-settled that "[i]t is sufficient that the plaintiff succeeded on any significant issue in [the] litigation, ... regardless of the magnitude of the relief obtained, ..., if he received actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff ...." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir.1998) ("*Fletcher II*") (citations and internal quotation marks omitted). "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar v. Hobby*, 506 U.S. 103, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). On the other hand, under the prevailing party standard, "fee awards are not appropriate where, having failed to capture compensatory or punitive damages, a plaintiff wins only 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated.'" *Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir.1996) (quoting *Farrar*, 506 U.S. at 114, 113 S.Ct. 566).

The Second Circuit has held that section 1988 fees can be awarded "not only [for] the cost of obtaining a favorable judgment but also to the cost of successfully defending that judgment," including "against postjudgment motions," as well as "for time reasonably spent in preparing and defending an application for § 1988 fees." *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir.1999) (citations omitted). "As a general matter, such 'motion costs should be granted whenever underlying costs are allowed.'" *Id.* (citation omitted). Additionally, " '[a]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Fletcher II*, 143 F.3d at 763 (citation omitted).

Here, the plaintiff has plainly prevailed against Carlone. The jury awarded her $1,000 in compensatory damages and $40,000 in punitive damages against Carlone on her sole section 1983 claim of excessive force. The plaintiff is therefore eligible for a section 1988 attorneys' fee award.

## B. Lodestar determination

"In determining reasonable attorneys fees the court must calculate a 'lodestar' figure based upon 'the hours reasonably spent by counsel ... multiplied by the reasonable hourly rate.'" *Cruz*, 34 F.3d at 1159 (citation omitted). "Calculation of this basis, generally referred to as the 'lodestar,' ... requires the court to determine the number of hours reasonably spent on the litigation and to exclude hours that '[we]re excessive, redundant, or otherwise unnecessary' due to, for example, 'overstaff[ing]' ...." *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997) (citations omitted). The "court is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items.' ... However, '[t]he task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (citations omitted). Moreover, "[w]hile the degree of the plaintiff's success is the most critical factor in determining the reasonableness of a fee award, ... [the Second Circuit] consistently [has] resisted a strict proportionality requirement in civil rights cases." *Lunday v. City of Albany*, 42 F.3d 131, 134–35 (2d Cir.1994) (per curiam) (citations and internal quotation marks omitted).

"The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Cruz*, 34 F.3d at 1159 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40

(1983)). The Second Circuit has held that "the 'prevailing community' the district court should consider to determine the 'lodestar' figure is 'the district in which the court sits,' unless there has been a showing that 'special expertise of counsel from a . . . [different] district [was] required.'" *Id.* (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983)).

"After calculating the lodestar, the district court may consider other factors 'that may lead [it] to adjust the fee upward or downward, including the important factor of the 'results obtained' ' . . . ., as well as the 12 *Hensley* factors . . . ."[1] *Orchano*, 107 F.3d at 98 (citation omitted). "Although one of the *Hensley* factors is the amount involved in the suit, this does not mean that the fees awarded may not permissibly exceed the amount recovered. The reduction of a requested fee merely because the damages recovery was small is 'error unless the size of the award is the result of the quality of representation,' for 'tying that award to the amount of damages would subvert the statute's goal of opening the court to all who have meritorious civil rights claims.'" *Id.* (citation omitted). " 'A presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award,' . . . and a reasonable fee may well exceed the prevailing plaintiff's recovery . . . ." *Id.* (citations omitted).

Here, the plaintiff has requested total attorneys' fees in the amount of $14,962.50, and costs in the amount of $877.97. Amended Affidavit of Rosemarie Paine in Support of Application for Attorneys' Fees (Dkt. No. 50) at ¶ 13. This requested fees figure is based on an hourly rate of $250 for Attorneys Paine and Cerritelli and

$175 for Papastavros. *See* Dkt. Nos. 45, 46, & 50.

 The court finds that some of the hourly rates charged by plaintiff's counsel are excessive in comparison to rates charged for similar services of lawyers of reasonably comparable skill, experience, and reputation in Connecticut. The court finds a rate of $200/hour reasonable for Attorney Paine's work on this case. This rate is a function of her eight years of experience and her expertise in civil rights and police brutality case. The court finds the rate requested by Attorney Cerritelli is excessive in relation to his three years' experience. The court awards him a rate of $175/hour, a generous rate for a fairly inexperienced attorney with limited experience in civil rights litigation. The court finds this same rate—$175/hour—to be reasonable for Attorney Papastavros, a fourth-year attorney with some experience in civil rights actions.

The court has reviewed the fee entries and finds the number of hours expended on preparation and trial of this case to be reasonable, and notes that the defendants have objected only to the hourly rate discussed above. The court does not consider it necessary to adjust the lodestar figure upward or downward to account for the results obtained or any of the *Hensley* factors. Accordingly, the plaintiff is awarded $10,950 for Attorney Paine's work ($200 × 54.75 hours), $525 for Attorney Cerritelli's work ($175 × 3 hours), and $525 for Attorney Papastavros's work ($525 × 3 hours), for a total attorneys' fee award of $12,000.

Moreover, the court has reviewed the costs for which the plaintiff seeks reim-

---

1. The twelve *"Hensley* factors" are:
 (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
 *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 97 (2d Cir.1997) (citation omitted).

**234**

bursement. The court finds that these disbursements are reasonable in the context of this litigation. Accordingly, in addition to the fee award of $12,000, the court awards the plaintiff costs and expenses of $877.97.

## IV. Conclusion

The court finds that Carlone has failed to carry his burden of demonstrating his entitlement to judgment as a matter of law or, alternatively, to a remittitur or new trial. As such, Carlone's Motion for Judgment Notwithstanding Verdict and for New Trial or Remittitur in the Alternative [Dkt. No. 40] is DENIED.

The plaintiff's Application for Award of Attorneys' Fees and Costs [Dkt. No. 43] is GRANTED. The court finds that the plaintiff should be awarded reasonable and necessary attorneys' fees pursuant to 42 U.S.C. § 1988(b) in the amount of $12,000. The court further finds that the plaintiff should be reimbursed her costs in the amount of $877.97, pursuant to section 1988.

**SO ORDERED.**